2001 OK 110

Frank KEATING, Governor of the State of Oklahoma, Plaintiff/Appellant,

v.

Drew EDMONDSON, Attorney General of the State of Oklahoma, Defendant/Appellee.

No. 95,687.

Supreme Court of Oklahoma.

Dec. 4, 2001.

Mike Hunter, Judy Terry, Oklahoma City, OK, for Plaintiff/Appellant.

Andrew Tevington, Assistant Attorney General, Oklahoma City, OK, for Defendant/Appellee.

Lee Slater, Oklahoma City, OK, For Amicus Curiae.

KAUGER, J.

¶ 1 The first impression issue presented is whether *74 O.S.1991 § 10.3* (A) [1] prohibits a

1. Title *74 O.S.1991 § 10.3* (A) provides:

"Within forty-five (45) days of assuming office, each Governor shall create a cabinet system for the executive branch of state government. Said cabinet system shall be an organizational framework created by executive order which includes all executive agencies, boards, commissions, or institutions and their assignments to specific cabinet areas. The cabinet system shall consist of no fewer than ten or more than fifteen cabinet areas and each cabinet area shall consist of executive agencies, boards, commissions, or institutions with similar programmatic or administrative objectives; provided, one cabinet area shall consist of the Oklahoma Department of Veterans Affairs, its institutions and other executive agencies, boards, commissions and institutions which are related to veterans. The Governor's cabinet shall be in effect until the Legislature supersedes each cabinet area by providing by law for specific cabinet areas or departments, or

Governor's alteration of the executive's cabinet system established within the forty-five day time frame provided by the statute. We determine that it does.[2]

## FACTS

¶ 2 On May 26, 2000, the plaintiff/appellant, Frank Keating, Governor of the State of Oklahoma (Governor), issued Executive Order No.2000–11 abolishing the cabinet area of Commerce and creating the cabinet area of Economic Development and Special Affairs. On the same day, the Governor appointed Russell Perry (Perry) to serve in the newly created cabinet seat. Perry had earlier been appointed to serve as the acting or interim Secretary of Commerce.[3] However, his nomination was deemed rejected when the second session of the Forty-seventh Oklahoma Legislature adjourned without considering his nomination.[4]

¶ 3 Senator Angela Monson submitted a request for an official opinion to the defendant/appellee, Drew Edmondson, Attorney General of the State of Oklahoma (Attorney General), on June 8, 2000, concerning the Governor's authority to make changes in his cabinet.[5] Pursuant to statutorily imposed duties,[6] the Attorney General issued an official opinion on October 26, 2000,[7] providing in pertinent part at ¶ 30:

"... 1. The governor may not modify the executive Cabinet after the forty-five-day period established at the beginning of his or her term for the creation of the Cabinet. See [sic] *74 O.S.1991, [sic] § 10.3.* The

removes by law the authority of the Governor to create a cabinet area."

2. Our resolution of the cause negates the necessity of addressing the arguments of the *amicus curiae*, Stratton Taylor, President *Pro Tempore* of the Oklahoma Senate (President *Pro Tempore),* that a different interpretation of the statute: 1) would result in usurping the Legislature's authority to create state offices and the conditions for filling them; and 2) would emasculate the Oklahoma State Senate's role of advice and consent to executive appointments. See, the Okla. Const. art. 5, §§ 1 and 36 and art. 6, § 1; *74 O.S.1991 § 10.3* (B).

3. Appointment of an acting or interim Secretary became necessary when Howard Barnett resigned the position to become the Governor's Chief of Staff.

4. Senate Rule 9–1 of the Standing Rules of the Senate of the Forth-seventh Oklahoma Legislature provides:

"REJECTION. No person whose nomination has been rejected by the Senate shall be eligible to be later confirmed by the Senate during the same session for appointment to the same position. If an executive nomination is not approved during the regular session in which it is submitted, it shall be deemed rejected. If an interim executive nomination is not approved during the first regular session following its submission, it shall be deemed rejected. The President Pro Tempore shall notify the appointing authority of the rejection of an executive nomination by the Senate, and shall likewise notify the chief executive of the entity to which the nomination relates."

5. The questions outlined in Senator Monson's letter of June 8, 2000, are as follows:

"1. May the Governor abolish one Cabinet Area and create another with essentially the same powers and duties in order to avoid the prohibition against appointment of a person previously rejected by the Senate? Stated differently, is a person whose nomination has been rejected by the Senate eligible to be appointed to the same or similar position?
2. Is a person entitled to serve as a Cabinet Secretary on an acting or interim basis if the letter nominating the person does not expressly indicate that the person is to serve on such bases?
3. Is a person who has not been appointed on an acting or interim basis entitled to enter upon the duties of the office and receive any compensation?"

6. Title *74 O.S. Supp.1999 § 18b* provides in pertinent part:

"A. The duties of the Attorney General as the chief law officer of the state shall be:
... 5. To give an opinion in writing upon all questions of law submitted to the Attorney General by the Legislature or either branch thereof, or by any state officer, board, commission or department, provided, that the Attorney General shall not furnish opinions to any but district attorneys, the Legislature or either branch thereof, or any other state official, board, commission or department, and to them only upon matters in which they are officially interested;
... 17. To respond to any request for an opinion of the Attorney General's office submitted by a member of the Legislature, regardless of subject matter, by written opinion determinative of the law regarding such subject matter ..."

7. Question Submitted by: The Honorable Angela Z. Monson, State Senator, District 48, 2000 OK AG 54, ¶ 30.

power to modify the Cabinet after this time rests with the Legislature. . . .

8. When the Governor attempts to create a Cabinet post outside the legislative process more than forty-five days after the Governor's term begins, the post does not exist; therefore, anyone the Governor attempts to appoint to that post is not a Cabinet secretary. Instead, the person the Governor attempted to appoint would be an employee of the Governor's office if the Governor and the person he tried to appoint had an agreement that the failed appointee would work for pay. . . ."

¶ 4 Recognizing the duty to follow the Attorney General's opinion until overturned by a court of competent jurisdiction,[8] the Governor filed a petition for declaratory relief[9] and stay of effectiveness of the opinion challenging the cited portions of the opinion on October 27, 2000. After hearing oral argument and considering the briefs of the parties and of the *amicus curiae*, Stratton Taylor, President *Pro Tempore* of the Oklahoma Senate (President *Pro Tempore*), the trial judge found the Attorney General's opinion to be a correct statement of the law set forth in *74 O.S.1991 § 10.3*. On December 5, 2000, judgment was entered in the Attorney General's favor and a stay pending appeal was granted. On December 29, 2000, the Governor appealed a single issue—whether a Governor is empowered under *74 O.S. 10.3* (A) to reorganize the executive cabinet throughout the term of office.[10] We retained the cause on April 27, 2001. The briefing cycle was completed on August 31, 2001.

**8.** *Hendrick* v. *Walters*, 1993 OK 162, ¶ 20, 865 P.2d 1232; *State ex rel. York v. Turpen*, 1984 OK 26, ¶ 1, 681 P.2d 763; *State v. District Court of Mayes County*, 1967 OK 228, ¶ 17, 440 P.2d 700; *Rasure v. Sparks*, 1919 OK 231, ¶ ——, 183 P. 495.

**9.** Title *12 O.S.1991 § 1651*.

**10.** The Governor's petition in error, filed on December 29, 2000, provides in pertinent part at exhibit C:

"... Issue Raised by Appellant
The issue before this Court is whether *74 O.S. Section [sic] 10.3* (A) empowers a Governor to reorganize his cabinet throughout his term of office as changing times and circumstances warrant, the 45–days referenced merely being

¶ 5 **THE CLEAR, EXPLICIT, MANDATORY AND UNMISTAKABLE LANGUAGE OF** *74 O.S.1991 § 10.3* **(A) PROHIBITS A GOVERNOR, HAVING ESTABLISHED AN EXECUTIVE CABINET WITHIN THE FORTY–FIVE DAY TIME FRAME ESTABLISHED BY THE STATUTE, FROM ALTERING THE CABINET SYSTEM.**

■ ¶ 6 The Governor asserts that *74 O.S. 1991 § 10.3* (A)[11] should be construed to permit gubernatorial reorganization throughout a term of office as changing times and circumstances warrant. He argues that the forty-five day time limitation contained in the statute is merely the period within which the initial cabinet must be formed. The Attorney General contends that the plain language of § 10.3(A): 1) requires the creation of an executive cabinet within forty-five days of the Governor's taking office; and 2) the cabinet so created cannot be altered absent legislative intervention.[12] We agree.

¶ 7 Title *74 O.S.1991 § 10.3* (A) provides:

**"Within forty-five (45) days of assuming office, each Governor shall create a cabinet system for the executive branch of state government.** Said cabinet system shall be an organizational framework created by executive order which includes all executive agencies, boards, commissions, or institutions and their assignments to specific cabinet areas. The cabinet system shall consist of no fewer than ten or more

a time frame within which a Governor is to put an initial cabinet in place, or whether a Governor is barred from making changes to his cabinet outside the 45–day time frame."

**11.** Title *74 O.S.1991 § 10.3* (A), see note 1, supra.

**12.** We are not asked to determine the viability of any particular cabinet office. Apparently, the Governor created the cabinet position of Secretary of Science and Technology Development outside the mandated forty-five day time frame of *74 O.S.1991 § 10.3* (A), see note 1, supra. [The Governor's reply brief, p. 8, indicates that this position was created in 1998.] We note that the Legislature has recognized the existence of this position by assigning the subject secretary to the School Pilot Program Coordinating Committee. *70 O.S. Supp.2000 § 1210.725* (A).

than fifteen cabinet areas and each cabinet area shall consist of executive agencies, boards, commissions, or institutions with similar programmatic or administrative objectives; provided, one cabinet area shall consist of the Oklahoma Department of Veterans Affairs, its institutions and other executive agencies, boards, commissions and institutions which are related to veterans. **The Governor's cabinet shall be in effect until the Legislature supersedes each cabinet area by providing by law for specific cabinet areas or departments, or removes by law the authority of the Governor to create a cabinet area."** [Emphasis suppled.]

¶ 8 In determining whether a statute applies to a given set of facts, we focus on legislative intent [13] which controls statutory interpretation.[14] Intent is ascertained from the whole act in light of its general purpose and objective [15] considering relevant provisions together to give full force and effect to each.[16] The Court presumes that the Legislature expressed its intent and that it intended what it expressed.[17] Statutes are interpreted to attain that purpose and end [18] championing the broad public policy purposes underlying them.[19] Only where the legislative intent cannot be ascertained from the statutory language, i.e. in cases of ambiguity or conflict, are rules of statutory construction employed.[20]

¶ 9 While acknowledging the legislative authority to alter the executive's cabinet,[21] the Governor argues that *74 O.S.1991 § 10.3* (A) contains no express limitation on his reorganization authority. He asserts that the statute is ambiguous for what it does not say—it does not expressly provide that the Governor may not alter or amend the cabinet system initially established. The Governor contends that the gubernatorial cabinet, however designed or altered during the chief executive's term, will be in effect under the statute unless expressly superseded by the Legislature.

13. *Nealis v. Baird*, 1999 OK 98, ¶ 55, 996 P.2d 438; *Cooper v. State ex rel. Dept. of Public Safety*, 1996 OK 49, ¶ 10, 917 P.2d 466.

14. *Smicklas v. Spitz*, 1992 OK 145, ¶ 8, 846 P.2d 362; *Clifton v. Clifton*, 1990 OK 88, ¶ 7, 801 P.2d 693; *Fuller v. Odom*, 1987 OK 64, ¶ 4, 741 P.2d 449.

15. *McSorley v. Hertz Corp.*, 1994 OK 120, ¶ 6, 885 P.2d 1343; *Oglesby v. Liberty Mut. Ins. Co.*, 1992 OK 61, ¶ 8, 832 P.2d 834; *Smicklas v. Spitz*, see note 14, supra.

16. *Haney v. State*, 1993 OK 41, ¶ 5, 850 P.2d 1087; *Public Serv. Co. of Oklahoma v. State ex rel. Corp. Comm'n*, 1992 OK 153, ¶ 8, 842 P.2d 750.

17. *Minie v. Hudson*, 1997 OK 26, ¶ 7, 934 P.2d 1082; *Fuller v. Odom*, see note 14, supra; *Darnell v. Chrysler Corp.*, 1984 OK 57, ¶ 5, 687 P.2d 132.

18. *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City*, 1995 OK 62, ¶ 5, 901 P.2d 800, cert. denied, 516 U.S. 1029, 116 S.Ct. 674, 133 L.Ed.2d 523 (1995); *Wilson v. State of Oklahoma ex rel. Oklahoma Tax Comm'n*, 1979 OK 62, ¶ 5, 594 P.2d 1210; *Affiliated Mgt. Corp. v. Oklahoma Tax Comm'n*, 1977 OK 183, 570 P.2d 335.

19. *Haggard v. Haggard*, 1998 OK 124, ¶ 1, 975 P.2d 439; *Price v. Southwestern Bell Tel. Co.*, 1991 OK 50, ¶ 7, 812 P.2d 1355.

20. *State ex rel. Dept. of Human Serv. v. Colclazier*, 1997 OK 134, ¶ 9, 950 P.2d 824; *Matter of Estate of Flowers*, 1993 OK 19, ¶ 11, 848 P.2d 1146.

21. The Governor's brief, filed on June 25, 2001, provides in pertinent part:

at p. 4 "... The Legislature, while empowered to restrict the Governor's discretion to reorganize the cabinet, has failed to do so...."
at p. 5 "... [The language of the statute] merely reserves to the Legislature the right to supersede the cabinet areas provided by law. This can be accomplished by passing a law abolishing the cabinet system in general or by simply changing the parameters under which a Governor exercises discretion...."
The Governor's reply brief, filed on August 10, 2001, provides in pertinent part at p. 6:
"... Appellant fully recognizes the Legislature's power to place qualifications and limitations upon a Governor's power to make appointments.... It must be presumed that the Legislature is able to draft what it wants to occur, particularly with respect to statutes allocating power between equal branches of government...."
Admissions in the brief may be regarded as a supplement to the appellate record. *World Publishing Co. v. White*, 2001 OK 48, ¶ 19, 32 P.3d 835, *Oklahoma Urban Renewal Auth. v. Medical Technology & Research Auth. of Oklahoma*, 2000 OK 23, ¶ 14, 4 P.3d 677; *Wright v. Grove Sun Newspaper, Inc.*, 1994 OK 37, ¶ 2, 873 P.2d 983; *Kwikset/Emhart v. Mayberry*, 1990 OK 112, ¶ 3, 800 P.2d 239.

¶ 10 The Governor finds support in *Ethics Comm'n v. Keating*, 1998 OK 36, ¶ 18, 958 P.2d 1250 and in *Cox v. Dawson*, 1996 OK 11, ¶¶ 6 and 7, 911 P.2d 272. Both causes are distinguishable on their facts. In *Keating*, we were asked to determine whether an Ethics Commission's rule prohibiting the use of public property for partisan political fundraisers prohibited the Department of Public Safety from providing the Governor with transportation to partisan political fundraising events. We determined that the ethics rule did not control based, in part, on the fact that the statute establishing authority for the Governor's state-provided transportation contained no such express limitation. Unlike the statutory scheme at issue in *Keating*, 74 *O.S.1991 § 10.3* (A) specifically requires the Governor to appoint a cabinet and provides for the action necessary for its alteration—legislative intervention. The statute provides that the cabinet system "shall be in effect" until the Legislature supersedes cabinet areas by law or removes the Governor's authority to create a cabinet area.

¶ 11 *Cox* involved the appropriate interpretation of *45 O.S. Supp.1995 § 1* [22]—the statute relating to appointments to the Oklahoma Mining Commission. In construing the statutory scheme in *Cox*, we determined that the statute was ambiguous for what it did not contain-the statute did not expressly delineate the term of office for Commissioners appointed subsequent to October 1, 1986.

¶ 12 *Cox* involved a lacuna—a gap in the law.[23] No such void exists here. Rather, 74 *O.S.1991 § 10.3* (A) authorizes the creation of an executive cabinet and in clear and mandatory language [24] sets out the rules for its formation and its alteration. The statute provides that: 1) the Governor "shall" create a cabinet system within forty-five days of assuming office; 2) the cabinet "shall" be an organizational framework including all executive agencies, boards, commissions or institutions; 3) the cabinet "shall" consist of no less than ten and no more than fifteen cabinet areas-each of which "shall" consist of executive agencies, boards, commissions, or institutions with similar programmatic or administrative objectives; 4) one cabinet area "shall" consist of the Oklahoma Department of Veterans Affairs, its institutions and related agencies, boards, commissions and institutions; and 5) the cabinet "shall" be in effect until the Legislature alters the cabinet structure by law or removes the Governor's authority to create a cabinet area. Section

---

**22.** Title *45 O.S. Supp.1995 § 1* provides in pertinent part:

"A. There is hereby created the Oklahoma Mining Commission. The Commission shall be composed of nine (9) members to be appointed by the Governor with the advice and consent of the Senate. The Commission shall constitute a body corporate of the State of Oklahoma, and exercise by the Commission of the power conferred by this act shall be deemed and shall be held to be an essential governmental function of the State of Oklahoma. Beginning January 1, 1986, one member shall be appointed for a term of one (1) year; one member shall be appointed for a term of two (2) years; one member shall be appointed for a term of three (3) years; one member shall be appointed for a term of four (4) years; one member shall be appointed for a term of five (5) years; two members shall be appointed for a term of six (6) years; and two members shall be appointed for a term of seven (7) years. Each member shall be a qualified elector of this state. . . .
B. The Commission shall meet at least six times annually. A majority of the Commission shall constitute a quorum. Commission members may be removed only for cause.

Whenever a vacancy shall occur, the Governor shall appoint a person to fill the unexpired term of the vacant office. Each member of the Commission shall take and subscribe to the constitutional and statutory oath of office prior to the performance of any duties as a Commission member."
The statutory provision was amended in 1998 to make clear that, following the initial terms outlined by the statute, all appointments are for seven year terms.

**23.** *City of Oklahoma City v. Oklahoma Tax Comm'n*, 1990 OK 27, ¶ 10, 789 P.2d 1287; *State v. Goforth*, 1989 OK 37, ¶ 9, 772 P.2d 911; *Maule v. Independent School Dist. No. 9*, 1985 OK 110, ¶ 11, 714 P.2d 198; R. Aldisert, "Hard Core Judicial Process Problems Facing Judges in the 80's", p. 34 (1982). It is worthy to note that the respondent in *Cox v. Dawson*, 1996 OK 11, ¶ 6, 911 P. 2d 272 recognized the statutory gap. The Attorney General has not, as did the respondent in *Cox*, conceded this point.

**24.** *Walker v. Group Health Serv., Inc.*, see note 26, infra; *United States through Farmers Home Admin. v. Hobbs*, see note 25, infra; *State ex rel. Macy v. Freeman*, see note 25, infra; *Forest Oil Corp. v. Corporation Comm'n*, see note 25, infra.

10.3(A) provides for the creation of the executive cabinet and at the same time mandates that the cabinet shall be in effect until the Legislature intervenes—either by passing laws altering the cabinet's structure or by removing the Governor's authority to create a cabinet position.

¶ 13 Generally, when the Legislature uses the term "shall", it signifies a mandatory directive or command.[25] Although "shall" can be used permissively,[26] in drafting *74 O.S.1991 § 10.3* (A), the Legislature used the directory term a total of six times in the four-sentence provision. Clearly, the Legislature intended to impose restrictions on the state's executive in the formation of a cabinet system. To achieve that end, the legislative body used mandatory language to ensure that the statutorily delineated parameters would be followed. Further, it provided the means for alteration of the cabinet so established-utilizing the same directory term. Pursuant to the statutory provision, the Governor's cabinet exists until the Legislature acts to alter it. The statute vests no power in the Governor to alter the cabinet at will.

¶ 14 In order to adopt the Governor's position-that *74 O.S.1991 § 10.3* (A) should be construed to permit gubernatorial reorganization throughout a term of office as changing times and circumstances warrant, we would have to read an exception into the statutory provision which simply does not exist. We decline to do so.[27] Rather, we give effect to the clear meaning of the statute's unambiguous language.[28] We determine that the clear, explicit, mandatory and unmistakable language of *74 O.S.1991 § 10.3* (A) prohibits a governor, having established an executive cabinet within the forty-five day time frame provided by the statute, from altering the cabinet system.

¶ 15 Our determination that the language of *74 O.S.1991 10.3* (A)[29] is clear and unambiguous makes it unnecessary to address the other construction-based arguments proffered by the Governor.[30] A cardinal precept of statutory construction is that where a statute's language is plain and unambiguous, and the meaning clear and unmistakable, no justification exists for the use of interpretative devices to fabricate a different meaning.[31] The Governor's argument concerning the necessity of construing *74 O.S.1991 § 10.3* (A) in a manner sufficient to avoid an absurd result is just such a construction tool.[32] It is inapplicable if its application violates legislative intent.[33] Further, only when the statutory language permits, may we adopt a construction intended to avoid hardship or evils intended to be prevented.[34] We recognize that the Legislature is deemed to have adopted an administrative construction of a statute when, subsequent to such construction, the Legislature amends or reenacts a statute without overriding the ad-

25. *Walker v. Group Health Serv., Inc.,* see note 26, infra; *United States through Farmers Home Admin.* v. *Hobbs,* 1996 OK 77, ¶ 7, 921 P.2d 338; *State ex rel. Macy v. Freeman,* 1991 OK 59, ¶ 8, 814 P.2d 147; *Forest Oil Corp. v. Corporation Comm'n,* 1990 OK 58, ¶ 26, 807 P.2d 774.

26. *Walker v. Group Health Serv., Inc.,* 2001 OK 2, ¶ 25, 37 P.3d 749; *Minie v. Hudson,* 1997 OK 26, ¶ 7, 934 P.2d 1082; *Texaco, Inc. v. City of Oklahoma City,* 1980 OK 169, ¶ 0, 619 P.2d 869.

27. The Court does not read exceptions into a statutory provision not made by the Legislature. *Chamberlain v. American Airlines,* 1987 OK 62, ¶ 15, 740 P.2d 717; *City of Bethany v. District Court of Oklahoma County,* 1948 OK 38, ¶ 16, 191 P.2d 187; *City of Bristow v. Groom,* 1944 OK 223, ¶ 11, 151 P.2d 936.

28. *Wiseman v. Boren,* 1976 OK 2, ¶ 10, 545 P.2d 753; *Shaw v. Grumbine,* 1929 OK 116, ¶ 0, 278 P. 311.

29. Title *74 O.S.1991 § 10.3* (A), see note 1, supra.

30. *State ex rel. Dept. of Human Serv. v. Colclazier,* see note 20, supra; Matter of *Estate of Flowers,* see note 20, supra.

31. *Neer v. State ex rel. Oklahoma Tax Comm'n,* 1999 OK 41, ¶ 16, 982 P.2d 1071; *In re Guardianship of Campbell,* 1966 OK 99, ¶ 13, 450 P.2d 203.

32. *Cox v. Dawson,* see note 23 at ¶ 20, supra; *Strelecki v. Oklahoma Tax Comm'n,* 1993 OK 122, ¶ 20, 872 P.2d 910.

33. *State ex rel. Macy v. Board of County Comm'rs,* 1999 OK 53, ¶ 12, 986 P.2d 1130; *Kratz v. Kratz,* 1995 OK 63, ¶ 11, 905 P.2d 753.

34. *Independent School Dist. No. JI–69 v. Independent School Dist. No. D–45,* 1961 OK 94, ¶ 14, 363 P.2d 835.

ministratively imposed statutory gloss.[35] Nevertheless, to have persuasive value, the administrative construction must have been reasonable and not clearly wrong.[36] Also, where neither ambiguity nor doubt exists, administrative construction of a statute will not override the plain statutory language.[37] Finally, in light of the Legislature's clear and mandatory language reserving the power to alter the cabinet unto itself, the Governor's argument that the authority to create a cabinet under 74 O.S.1991 § 10.3 (A) impliedly carries with it the chief executive's authority to reorganize it as circumstances require is unconvincing. This is not a situation involving a gap in the legislative scheme.[38] Rather, 74 O.S.1991 10.3 (A) provides that it is the legislative department which holds the reorganization authority.

## CONCLUSION

¶ 16 The Okla. Const. art. 5, § 60 vests the Legislature with the authority to create checks and balances within the executive department.[39] The Governor concedes that it is the legislative prerogative to restrict the organization of the executive cabinet.[40] Since statehood, it has been recognized that the Governor has a limited appointment power.[41] The power of appointment is not an exclusive function of the executive, legislative or judicial departments. The Governor's appointment powers do not arise from any inherent power vested in the office.[42] Although the pursuit of greater appointment powers is nothing new,[43] Oklahoma citizens have reiterated the position that the Governor's appoint-

---

**35.** *Oral Roberts Univ.* v. *Oklahoma Tax Comm'n,* 1985 OK 97, ¶ 17, 714 P.2d 1013; *Schulte Oil Co., Inc.* v. *Oklahoma Tax Comm'n,* 1994 OK 103, ¶ 4, 882 P.2d 65.

**36.** *Independent Finance Inst.* v. *Clark,* 1999 OK 43, ¶ 13, 990 P.2d 845, *cert. denied,* 529 U.S. 1054, 120 S.Ct. 1557, 146 L.Ed.2d 462 (2000).

**37.** *Neer v. State ex rel. Oklahoma Tax Comm'n,* see note 31, supra; *C.H. Leavell & Co.* v. *Oklahoma Tax Comm'n,* 1968 OK 127, ¶ 16, 450 P.2d 211.

**38.** See, discussion and accompanying footnotes, p. 8, supra.

**39.** The Okla. Const. art. 5, § 60 provides in pertinent part:
"The Legislature shall provide by law for the establishment and maintenance of an efficient system of checks and balances between the officers of the Executive Department ..."

**40.** See, note 21, supra; Okla. Const. art. 6, § 13, note 41, infra.

**41.** Oklahoma's territorial law gave the governor the power to make all appointments. Section 2 of Oklahoma's Organic Act, 26 Stat. 82 (1890) provides:
"That the executive power of the Territory of Oklahoma Shall be vested in a governor, who shall hold office for four years and until his successor shall be appointed and qualified, unless sooner removed by the president of the United States. The governor shall reside within said Territory; shall be commander-in-chief of the militia thereof; he may grant pardons for offenses against the laws of said Territory; and reprieves for offenses against the laws of the United States, until the decision of the president can be made known thereon; he shall commission all officers who shall be appointed to office under the laws of said Territory, and shall take care that the laws be faithfully executed."
However, when the people of Oklahoma formed a state government and adopted the Oklahoma Constitution, the appointment power created in the Governor was substantially reduced. The Okla. Const. art. 6, § 13 provides:
"The Governor shall commission all officers not otherwise commissioned by law. All commissions shall run in the name and by the authority of the 'State of Oklahoma,' be signed by the Governor, sealed with the Great Seal of the State of Oklahoma, and attested by the Secretary of State. When any office shall become vacant, he shall, unless otherwise provided by law, appoint a person to fill such vacancy, who shall continue in office until a successor shall have been duly elected or appointed, and qualified according to law."
See, R. Henry, "Deliberations About Democracy: Revolutions, Republicanism, & Reform," 34 Willamette L.Rev. 533, 561 (1998), for a discussion of the division of powers among the departments of government in Oklahoma.

**42.** *Riley v. State ex rel. McDaniel,* 1914 OK 251, ¶ ——, 141 P. 264.

**43.** See, *Riley v. State ex rel. McDaniel,* note 42, supra. See also, *In re Initiative Petition No. 344,* 1990 OK 75, ¶ 3, 797 P.2d 326, which we rejected, in part, because it failed to advise the voters that the Governor would be allowed to appoint a majority of all boards and it removed the power of the Legislature to enact laws determining how vacancies of elected offices of the executive department were filled.

ment powers are limited and that governmental power should be widely dispersed.[44]

¶ 17 Just as the Governor's appointment powers are limited, this Court does not extend it auspices, in determining the validity of a statute, to consider the statute's propriety, desirability, wisdom or practicability. These matters are left to the legislative department.[45] Clearly, had the Legislature intended to allow gubernatorial authority to alter the cabinet, it could have done so.[46] Further, the Legislature is free to amend *74 O.S.1991 § 10.3* (A) to include such flexibility. Currently, however, no inconsistency, ambiguity or uncertainty exists concerning the action necessary to alter a gubernatorial cabinet established under *74 O.S.1991 § 10.3* (A).

¶ 18 In clear, mandatory, explicit and unmistakable language, the Legislature has provided that the Governor "shall" create a cabinet within forty-five days of taking office and that the cabinet "shall be in effect" until legislative intervention occurs. The meaning of the statute is clear and unmistakable leaving this Court without authority to apply rules of statutory construction. Nothing in the statute indicates that the Governor is free to alter the cabinet as circumstances warrant. Rather, the statutory language vests the authority to do so in the Legislature. Therefore, we hold that the clear, explicit, mandatory and unmistakable language of *74 O.S.1991 § 10.3* (A) prohibits a governor, having established an executive cabinet within the forty-five day time frame provided by the statute, from altering the cabinet system.

HARGRAVE, C.J., WATT, V.C.J., HODGES, LAVENDER, OPALA, KAUGER, SUMMERS, and BOUDREAU, JJ. concur.

WINCHESTER, J. concurs in result.

**44.** In 1988, the electorate in State Question 613 voted to make the Labor Commissioner an elected state official rather than permit the Commissioner to be appointed by the Governor. The people have also had opportunities to allow appointment to boards and commissions by persons other than the Governor. In 1990, pursuant to State Question 627, the people created the Ethics Commission with appointees by the Governor, Chief Justice, President *Pro Tempore* of the Senate, Speaker of the House and Attorney General. Okla. Const. art. 6, § 10. In 1992, the people approved State Question 649, the Oklahoma Building Bonds Commission, which provided that members be appointed by the Governor and leaders of the two houses. Okla. Const. art. 10, § 43.

**45.** See, *State ex rel. Cartwright v. Dunbar*, 1980 OK 15, ¶ 8, 618 P.2d 900; *Tate v. Logan*, 1961 OK 136, ¶ 0, 362 P.2d 670.

**46.** Research reveals that the Michigan Legislature has chosen such an approach. 6 M.G.L.A. § 17A provides:

"There is hereby established a cabinet, which shall serve directly under the governor. The cabinet shall consist of the secretary of administration and finance, the secretary of elder affairs, the secretary of environmental affairs, the secretary of health and human services, the secretary of public safety, the secretary of transportation and construction and such other offices of the executive department as the governor may from time to time designate."