191 P.3d 633 (2008)
2008 OK CIV APP 73
In the Matter of L.D.B., a minor child.
Crisis Pregnancy Outreach, Inc., Petitioner/Appellee,
v.
Chad Gottfried, Respondent/Appellant.
No. 105,354. Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 1.
Court of Civil Appeals of Oklahoma, Division No. 1.
July 18, 2008.
Kelly M. Greenough, Assistant Public Defender, Tulsa, OK, for Minor Child.
Chris Harper, Phillip P. Owens, II, Chris Harper, Inc., Edmond, OK, for Respondent/Appellant.

OPINION
ADAMS, Presiding Judge.
¶ 1 Chad Gottfried appeals a trial court order which terminated his parental rights to L.D.B. Because we agree that the trial court erred in relying upon a "settlement agreement" without either the execution by Gottfried of a permanent voluntary relinquishment or a determination that other statutory grounds existed for terminating his parental rights, we reverse the trial court's order and remand the case for further proceedings.
¶ 2 Crisis Pregnancy Outreach, Inc. (Agency) filed this proceeding eight days after the birth of L.D.B. to terminate the parental rights of the mother and the alleged putative father, Gottfried. The next day, L.D.B.'s mother executed a permanent relinquishment of her parental rights to the minor child in the presence of a trial judge, who then entered an order terminating those rights.[1] *634 Gottfried objected to termination of his rights, and the trial court subsequently held a hearing on Agency's request. After the presentation of some evidence, that hearing was continued until July 9, 2007.
¶ 3 At the July 9, 2007 hearing, Gottfried's attorney, who is not his attorney for this appeal, announced to the trial court that Gottfried was going to withdraw his objection to the termination of his parental rights because the adoptive parents had agreed to allow him visitation with L.D.B. pursuant to a visitation schedule the parties were in the process of settling. After a recess, Gottfried's counsel announced that "the parties have worked out astructured consent order with respect to the adoption," at which point the trial court injected, "This is not a consent case."
¶ 4 The trial court, as well as respective counsel for the minor child, Gottfried, and Agency, questioned Gottfried on the record and under oath concerning his understanding of, inter alia, his withdrawal of his objection to the termination, the parties' structured visitation plan, and the consequences of not finishing the hearing. The court further ascertained that Gottfried was not taking any medications, drugs or alcohol which would impair his judgment, that he had not been offered any money, and that his decision to withdraw his objection was voluntary and free from undue influence or pressure.
¶ 5 Upon completion of the inquiry, the trial court announced it would "accept the resolution of this case as articulated by the parties" and would sign a termination of parental rights order. However, Agency's counsel announced he would have to prepare one and circulate it. Ten days later, Gottfried filed a revocation of his consent in affidavit form, and the next day, his counsel moved to revoke his consent, requesting to "have this matter set down for Trial immediately on the merits." By order filed several weeks later, the trial court approved "the settlement agreement of the parties," which was therein incorporated by reference, and terminated Gottfried's parental rights. This order made no determination that Gottfried's rights were terminated pursuant to any statutory grounds.
¶ 6 Counsel for the minor child concedes, and the record demonstrates, that this case "had been plead as an action for the termination of parental rights, not an application for adoption without consent." Accordingly, this case is controlled by the Oklahoma Adoption Code, 10 O.S.2001 § 7501-1.1, et seq. (the Adoption Code). Section 7505-2.1 of the Adoption Code, entitled "Preadoption termination of parental rights," provides, in relevant part, that:
A. 1. Prior to the filing of a petition for adoption, a child-placing agency ... may file a petition for the termination of the parental rights of a putative father or a parent of the child.
* * * * * * * * *
D. At the hearing on the petition to terminate parental rights brought pursuant to this section, the court may, if it is in the best interest of the minor:
1. Accept a permanent relinquishment or consent to adoption executed by the putative father or parent of the minor pursuant to [§§ ] 7503-2.1, 7503-2.3 and 7503-2.4 of this title;[2] or
2. Terminate any parental rights which the putative father or parent may have upon any of the grounds provided in [§ ] 7505-4.2 of this title for declaring a consent unnecessary. (Emphasis added.)
¶ 7 Relying on § 7505-2.1(D)(1) and (2), Gottfried argues that, after he withdrew his objection to the termination of his parental rights, the trial court had only 2 options: (1) follow the procedures mandated by 10 O.S. 2001 § 7503-2.3 for obtaining a permanent relinquishment executed by him, or (2) make a finding that his parental rights are terminated based on one of the grounds provided by 10 O.S.2001 § 7505-4.2. Because the trial court did not exercise either option, Gottfried *635 argues the trial court improperly terminated his parental rights.
¶ 8 Counsel for the minor child does not dispute that Gottfried has never executed, before, at or after the July 9, 2007 hearing, a permanent relinquishment or consent to adoption. Other than arguing Gottfried understood the consequences when he withdrew his objection to the termination of his parental rights, Counsel for the minor child makes no argument regarding the validity of the trial court's termination order despite the lack of a permanent relinquishment.[3]
¶ 9 The issue on review, the interpretation of § 7505-2.1(D), is a question of law, and therefore our standard of review is de novo. This review requires an independent, non-deferential re-examination of the trial court's legal rulings. In re A.M. & R.W., 2000 OK 82, 13 P.3d 484; Gillette v. Gillette, 2002 OK CIV APP 106, 57 P.3d 888.
¶ 10 In determining whether a statute applies to a given set of facts, we focus on legislative intent, which controls statutory interpretation. Tulsa County Budget Board v. Tulsa County Excise Board, 2003 OK 103, 81 P.3d 662. Intent is ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each. Keating v. Edmondson, 2001 OK 110, 37 P.3d 882. Statutes are interpreted to attain that purpose and end championing the broad public policy purposes underlying them. Price v. Southwestern Bell Telephone Co., 1991 OK 50, 812 P.2d 1355. Where the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for statutory construction. Anschutz Corporation v. Sanders, 1987 OK 11, 734 P.2d 1290.
¶ 11 The Legislature's express purposes of the Adoption Code include, inter alia, to "[e]nsure and promote the best interests of the child in adoptions and to establish an orderly and expeditious process for movement of adoption matters through the courts" and to "[a]ffirm that the parent-child relationship is fundamental and that all adoption laws should be fair to the child and to each parent of the child." 10 O.S.2001 § 7501-1.2. Considering these purposes and the plain and unambiguous language of § 7505-2.1(D), we must agree with Gottfried.
¶ 12 Although § 7505-2.1(D)'s phrase "the court may" is generally considered a "permissive" action as opposed to "mandatory," the court's acceptance of a permanent relinquishment under § 7505-2.1(D)(1) is limited to one "executed by the putative father or parent ... pursuant to [§§ ] 7503-2.1, 7503-2.3 and 7503-2.4" of the Adoption Code. (Emphasis added.) The term "pursuant to" is a prepositional phrase meaning "to execute or carry out in accordance with ... when used in a statute, is a restrictive term," Black's Law Dictionary, 1237 (6th Edition), or "in conformance to or in agreement with; or according to a standard.," World Publishing Company v. White, 2001 OK 48, n. 21, 32 P.3d 835. (Emphasis added.)
¶ 13 The "standard" for permanent relinquishments is found in 10 O.S.2001 § 7503-2.1 and 10 O.S.2001 § 7503-2.3, two of the three statutes referenced by § 7505-2.1(D)(1). As explained in § 7503-2.3(A), "[a] permanent relinquishment may be executed by a person whose consent to the adoption of a minor is required by [§ ] 7503-2.1." (Emphasis added.) Section 7503-2.1 provides, in relevant part, that "[a] minor may be adopted when there has been filed written consent to adoption or a permanent relinquishment for adoption executed by" person or persons specified therein, e.g., "both parents of a minor" or "one parent of the minor, alone, if the other parent is dead, the parental rights of the other parent have been terminated, or the consent of the other parent is otherwise not required pursuant to [§ ] 7505-4.2."
¶ 14 Section 7503-2.1's requirements for filed, written and executed permanent relinquishments are refined in § 7503-2.3. The most pertinent of § 7503-2.3's mandates is that a permanent relinquishment "shall be in *636 writing, executed before a judge of the district court in this state, recorded by a court reporter" (emphasis added), § 7503-2.3(C), and includes, pursuant to § 7503-2.3(G), "the verification of the court" which "shall" follow "substantially" the three paragraph form provided therein, including, inter alia, a statement to the effect that the parent relinquishing his or her rights "personally appeared in open Court, before me, and orally and in writing executed the above and foregoing permanent relinquishment for adoption." (Emphasis added.)
¶ 15 The next section, § 7503-2.3(H), provides, in relevant part, that "[a] permanent relinquishment shall be signed before any judge of a court having probate or adoption jurisdiction in this state." Further, § 7503-2.3(L)(1) provides that "[a] court before which a permanent relinquishment has been executed may enter an order terminating parental rights of the parent of a child if such parent has executed a permanent relinquishment for adoption pursuant to the Oklahoma Adoption Code." (Emphasis added.) See also 10 O.S.Supp.2005 § 7502-1.1(B)(2).
¶ 16 In Article 2 of the Adoption Code, entitled Jurisdiction, Venue and Choice of Law, 10 O.S.Supp.2005 § 7502-1.3(B)(1) provides, as it applies herein, that:
A permanent relinquishment of a child for adoption or a consent to adoption, including, but not limited to, an extrajudicial consent signed by a putative father, will be recognized as valid and given effect in all proceedings brought pursuant to the Oklahoma Adoption Code in the courts of this state, if the permanent relinquishment or consent was executed:

1. Before an appropriate official and in the manner prescribed by the Oklahoma Adoption Code.

(Bold and italics added.)
¶ 17 The trial court erred as a matter of law when it terminated Gottfried's rights without either a permanent relinquishment executed by him in the manner prescribed by the Adoption Code or making the appropriate findings concerning the basis for a termination under § 7505-4.2. The order is reversed, and the case is remanded for further proceedings on Agency's request for termination of Gottfried's parental rights.
REVERSED AND REMANDED
HANSEN, J., and JOPLIN, J., concur.
NOTES
[1] A different judge of the District Court accepted Mother's permanent relinquishment and signed the order terminating her parental rights. Neither are involved in this appeal, nor is Mother a party herein.
[2] These statutes are found in Article 3 of the Adoption Code, "Adoption of Minors," whereas § 7505-2.1 is found in Article 5 of the Adoption Code, "Adoption Proceedings."
[3] When Agency filed a motion for an extension of time to file an answer brief approximately two weeks after the brief was due, the Oklahoma Supreme Court denied Agency's request and concluded the case was ready for decision. We decide this case based only on the briefs filed by Gottfried and Counsel for the minor child.