2011 OK CIV APP 123

Cassandra **FUNDERBURK,** Petitioner/Appellant,

v.

**OKLAHOMA STATE AND EDUCATION EMPLOYEES GROUP INSURANCE BOARD, Respondent/Appellee.**

**No. 107,685.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 18, 2011.

 

---

William D. Thomas, James C. Thomas, Thomas Law Firm, P.L.L.C., Tulsa, Oklahoma, for Petitioner/Appellant.

Gary R. Goff, Oklahoma City, Oklahoma, for Respondent/Appellee.

WM. C. HETHERINGTON, JR., Presiding Judge.

¶ 1 The sole issue in this appeal brought from a district court order affirming a final order of the Oklahoma State Employee and Education Group Insurance Board (Board) is whether the Board is required to comply with the rule-making process under Article I of the Administrative Procedures Act (APA), 75 O.S.2001 § 250 *et seq.*,[1] when fulfilling its statutory duty to "compile a comprehensive Schedule of Benefits." The Board found it did not. We agree. The district court's order is AFFIRMED.

### STANDARD OF REVIEW

¶ 2 It is undisputed that the Board is subject to the APA. Under Article II of the APA, the district court, the Court of Civil Appeals, and the Supreme Court apply the same review standard. *City of Tulsa v. State ex rel. Public Employees Relations Board,* 1998 OK 92, ¶ 12, 967 P.2d 1214, 1219. As raised here, statutory interpretation by an agency presents a question of law which we review under a *de novo* standard. *Stipe v. State ex rel. Bd. of Trustees of Oklahoma*

---

1. "Article I [of the APA] governs 'rulemaking' and 'rules' by state agencies pursuant to their delegated power." *Musgrove Mill, LLC v. Capitol–Medical Center Improvement & Zoning Commission,* 2009 OK 19, ¶ 7, 210 P.3d 835, 838. The designated Article I sections relate to agency filing and publication requirements for rules. *See* § 250.1 of the APA. "Rulemaking" is defined by § 250.3(16) of the APA as "the process employed by an agency for the formulation of a rule."

*Public Employees Retirement System,* 2008 OK 52, ¶ 7, 188 P.3d 120, 122. Such review is plenary, independent, and non-deferential. *State ex rel. Protective Health Services State Dept. of Health v. Vaughn,* 2009 OK 61, ¶ 9, 222 P.3d 1058, 1064.

## FACTS

¶ 3 Cassandra Funderbunk (Appellant) was insured by HealthChoice (Insurer), a group health insurance plan administered by the Board, at the time she had medical procedures performed by out-of-state, non-network medical providers in 2006. After Appellant's payment of her non-network, out-of-pocket maximum, Insurer paid a portion of Appellant's claim but declined payment of the balance owed in excess of the "allowed charge." [2] In July 2007, Appellant filed a request for review of Insurer's denial by the Board's three-member grievance panel (the Panel), complaining "coverage amounts paid calculated on basis of 'allowable' rather than actual cost contrary to employee agreement."

¶ 4 In January 2008, Appellant petitioned the Board for a declaratory ruling under § 307 of the APA,[3] concerning its alleged failure "to follow the rule making procedure under the [APA]" when "compiling a comprehensive schedule of medical benefits pursuant to 74 O.S. § 1321." The administrative record establishes the Panel's chairman held a pre-hearing conference the same month at which the parties (1) stipulated to a single hearing on the grievance and declaratory ruling and (2) agreed to a briefing schedule on those issues. A hearing was held before the Panel on April 2, 2008. Following the Panel's announcement that the parties' pre-hearing briefs had been read and identification of the issues before it, Appellant and two other witnesses testified. Prior to recessing for a later deliberation, the Panel accepted the parties' stipulations concerning the numerous exhibits submitted by the Board.

¶ 5 By order signed and mailed to the parties April 4, 2008, the Panel denied her claim and concluded the Board was only required to follow the notice and publication requirements of the Oklahoma Meeting Act whenever it determines rates and benefits as expressly stated in § 1321. Appellant filed a timely petition for review in the Tulsa County District Court in accordance with § 318(B)(2) of the APA.[4] The Board responded and filed the administrative record. Upon review of the parties' briefs, court file and administrative record, the district court affirmed the Board's declaratory ruling and denial of Appellant's payment request and entered its order May 6, 2009. Nine days later, Appellant filed a motion for reconsideration. The District Court denied the motion by order filed November 15, 2009, from which Appellant filed a timely Petition in Error.[5]

2. The administrative record includes the 2006 version of HealthChoice Health Booklet which defines "allowed charges" as "the maximum charge allowed in determining the benefit under the Plan for a covered service or supply." The same booklet explains "Out of pocket maximums" are the amounts for which a member is responsible that are based on the use of network or non-network services and upon reaching the calendar year maximum, the plan "pays 100% of Allowed charges for the remainder" of that year. "Network provider" is defined therein as "[a] provider who has entered into a contract with the Board to accept the Plan's allowed charges for services and/or supplies provided to Plan participants." There is no specific definition of "non-network provider" in the booklet but that term is explained in the section "HealthChoice Provider Network" as "[n]etwork providers, individuals, facilities, and suppliers that do not contract with HealthChoice, are not subject to HealthChoice Allowed Charges."

3. Pursuant to 75 O.S.2001 § 307, a "declaratory ruling, or refusal to issue such ruling, shall be subject to a judicial review in the manner provided for review of decisions in individual proceedings as provided in Sections 317 through 323" of the APA.

4. Section 318 of the APA allows judicial review for any party aggrieved by a final agency order in an individual proceeding, and subsection (B)(2) provides for such review in district court in "the county in which the party seeking review resides or ... where the property interest affected is situated, within thirty (30) days after the appellant is notified of the final agency order."

5. Appellant alleged errors with the district court's separate orders in her Petition in Error, but failed to address in her Brief in Chief alleged errors with the order denying her "motion for reconsideration" and that part of the District Court's order affirming the Board's denial of additional payment. Errors raised in the Peti-

■ ¶ 6 As briefed, Appellant's argument the Board is required to comply with Article I rule making and publication requirements of the APA when compiling the Schedule of Benefits relies on three statutes within Oklahoma's "State and Education Employee Group Insurance Act" (Group Insurance Act), 74 O.S.2001 § 1301 *et seq.* Under the first, 74 O.S.Supp.2005 § 1304(12), the Board "*shall adopt rules* requiring payment for medical and dental services and treatment rendered by duly licensed hospitals, physicians, and dentists." The second statute, 74 O.S.Supp.2005 § 1306(12), reads, "[t]he Board, pursuant to [the APA, §§ 250 *et seq.*] *shall adopt such rules* consistent with the provisions of the [Group Insurance Act] as it deems necessary to carry out its statutory duties and responsibilities." (Emphasis added.)

■ ¶ 7 The third statute, 74 O.S. Supp. 2005 § 1321(A), requires the Board "to determine all rates and life, dental and health benefits" and "all rates shall be compiled in a comprehensive Schedule of Benefits." Appellant contends these three "enabling statutes" establish the Board (1) must adopt rules pursuant to Article I of the APA when determining rates for the Schedule of Benefits and (2) has incorrectly interpreted the first two sentences of 74 O.S.2001 § 1321(C), which provides:

> The Board may approve a mid-year adjustment provided the need for an adjustment is substantiated by an actuarial determination or more current experience rating. *The only publication or notice requirements that shall apply to the Schedule of Benefits shall be those requirements provided in the Oklahoma Open Meeting Act.* It is the intent of the Legislature that the benefits provided not include cosmetic dental procedures except for certain orthodontic procedures as adopted by the Board. (Emphasis added.)

tion in Error but not briefed are deemed waived. Okla.Sup.Ct.R. 1.11(k)(1).

6. Section 1321(A) reads:
 The Board shall have the authority to determine all rates and life, dental and health benefits. All rates shall be compiled in a comprehensive Schedule of Benefits. The Schedule of

Appellant contends the second sentence's notice and publication requirement under the Open Meeting Act (OMA) only applies to the "mid-year adjustment" addressed in the first sentence. She admits her interpretation results from application of the last antecedent rule. By this aid to statutory construction, limiting or restrictive phrases or clauses within a statute generally refer to and limits or restricts the immediately preceding clause or last antecedent. *Matter of Estate Tax Protest of Leake Estate,* 1994 OK CIV APP 157, ¶ 13, 891 P.2d 1299, 1303.

■ ¶ 8 In determining whether a statute applies to a given set of facts, we focus on legislative intent which controls statutory interpretation. *Keating v. Edmondson,* 2001 OK 110, ¶ 8, 37 P.3d 882, 886. Intent is ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each. *Id.* The Court presumes that the Legislature expressed its intent and that it intended what it expressed. *Id.* Statutes are interpreted to attain that purpose and end championing the broad public policy purposes underlying them. *Id.* Only where the legislative intent cannot be ascertained from the statutory language, *i.e.,* in cases of ambiguity or conflict, are rules of statutory construction employed. *Id.*

¶ 9 Appellant's second "more rational" interpretation of § 1321(C) appears to suggest it is ambiguous. Considering she fails to consider the express language and all of § 1321's provisions when interpreting the Legislature's notice and publication requirement in § 1321(C) to apply only to a "mid-year adjustment," we disagree.

¶ 10 There is no definition of "Schedule of Benefits" in the Group Insurance Act, in which the term is found only in § 1321. As used in § 1321(A),[6] "Schedule of Benefits" clearly means a comprehensive list of the rates and benefits, which the Board must

Benefits shall be available for inspection during regular business hours at the office of the State and Education Employees Group Insurance Board. The Board shall have the authority to annually adjust the rates and benefits based on claim experience.

initially determine and is authorized to annually adjust "based on claim experience." Section 1321(B) provides deadlines for the Board's establishment of "premiums for such state insurance plans offered for the next plan year," without mention of "Schedule of Benefits." [7]

¶ 11 In contrast to § 1321(A) and (B), § 1321(C) is comprised of three complete sentences addressing three separate subjects, i.e., mid-year adjustments, notice and publication requirements, and cosmetic dental procedures. Because § 1321(C)'s three sentences contain the limiting or restrictive terms or phrases, "provided," "only," and "not include ... except," respectively, they are more accurately described as statutory "exceptions" or "provisos."

¶ 12 A proviso ordinarily occurs within the body of a section while an exception is drafted as a separate section, but both operate to restrict the general applicability of legislative or statutory language. See 2A, Sutherland Statutory Construction, §§ 47.08 and 47.11. A proviso is presumed to refer only to the provision to which it is attached and to apply to the clause or provision immediately preceding, unless it clearly appears to have been intended to apply to some other matter. Hill v. Board of Education, 1997 OK 107, ¶ 6, 944 P.2d 930, 932.

¶ 13 Interpreting § 1321 in its entirety, § 1321(C)'s first sentence, providing the Board "may approve a mid-year adjustment" without specifying what may be adjusted, clearly refers to the same rates and benefits addressed in § 1321(A). This proviso restricts the Board's discretionary power to make such adjustments by the phrase, "provided the need for adjustment is substantiated by an actuarial determination or more current experience rating." Although not considered by either party, § 1321(C)'s third sentence is an exception, which like the first sentence, refers to § 1321(A) and re-stricts the Board's authority granted therein to determine "life, dental and health benefits" by expressly excluding as a possible benefit all "cosmetic dental procedures" but for certain Board-approved orthodontic procedures.

¶ 14 The second sentence in § 1321(C), i.e., "[t]he only publication or notice requirements that shall apply to the Schedule of Benefits shall be those requirements provided in the Oklahoma Open Meeting Act," is also a proviso. Because there is no preceding mention of notice or publication requirements anywhere in § 1321, the second sentence must be viewed as referring to the legislative mandate in §§ 1304(12) and 1306(12) of the Group Insurance Act for the Board to adopt rules "pursuant to the [APA]." As we interpret it, in light of our interpretation of § 1321 as a whole, this proviso clearly and unambiguously excepts or excludes from the Group Insurance Act's rule-making requirement the Board's statutory duties relating to the Schedule of Benefits and to any adjustments thereto permitted by § 1321(A) and (C) by its express limitation of notice and publication of the same under the OMA. Considering the potential adjustments authorized per year, this interpretation is consistent with the Legislature's express requirement the Board shall discharge its duties, as relevant here, "solely in the interest of the [Group Insurance Act]" and "for the exclusive purpose of providing benefits" and "defraying reasonable expenses of administering the [Group Insurance Act]."

¶ 15 Although the APA was neither raised nor interpreted at the agency or district court level when deciding the legal issue before us, it is important to also consider acceptance of Appellant's interpretation of § 1321(C) would require this Court to ignore the APA's definition of "rule" from which the Legislature expressly excludes "the approval,

---

7. Section (B) provides:
 The premiums for such insurance plans offered for the next plan year shall be established as follows:
 1. For active employees and their dependents, the Board's premium determination shall be made no later than the bid submission date for health maintenance organizations set by the Oklahoma State Employees Benefits Council, which shall be set in August no later than the third Friday of that month; and
 2. For all other covered members and dependents, the Board's and the health maintenance organizations' premium determinations shall be no later than the fourth Friday of September.

disapproval or prescription of *rates.*" 75 O.S. 2001 § 250.3(15)(b).[8] Referring to the APA's definition of "rule" when distinguishing "rule-making" and "adjudication," Justice Kauger explained in a specially-concurring opinion, "the Oklahoma APA *explicitly excised from the [Article] I rulemaking rubric the process of prescribing rates.*" (Emphasis in original.) *Southwestern Bell Telephone Co. v. Oklahoma Corporation Commission,* 1994 OK 38, ¶ 10, 873 P.2d 1001, 1014. *See also City of Sand Springs v. Department of Public Welfare,* 1980 OK 36, 608 P.2d 1139 (when applying a different exception of the APA's definition of "rule," the Court held not every decision by an agency must be in the form of a rule).

¶ 16 Interpreting together the APA and the Group Insurance Act, we conclude the unambiguous language of § 1321(C) clearly expresses the Legislature's intent to continue its exclusion of an agency's approval or pre-scription of rates from the definition of "rule" and the rule-making process of Article I of the APA while at the same time requiring minimum due process, *i.e.,* notice and an opportunity to be heard as granted by the OMA, for the Board's proposed adjustments to the "non-rate" aspects of the Schedule of Benefits.

¶ 17 Based on the foregoing reasons, the District Court's order affirming the final agency order and declaratory ruling of the Board is **AFFIRMED.**

BELL, C.J., and HANSEN, J., concur.

---

**8.** Pursuant to the Legislature's amendment, effective November 1, 2010, the same definition of "rules" is found in § 250.3(17) of the APA.