FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EDMOND CARMONA,
*Plaintiff-Appellee*,

and

ABRAHAM MENDOZA; ROGER
NOGUERIA, on behalf of themselves
and all others similarly situated,
*Plaintiffs*,

v.

DOMINO'S PIZZA, LLC, a Michigan
Corporation,
*Defendant-Appellant.*

No. 21-55009

D.C. No.
8:20-cv-01905-
JVS-JDE

OPINION

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted November 15, 2021
Pasadena, California

Filed December 23, 2021

Before:  Kim McLane Wardlaw, Barrington D. Parker,[*]
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hurwitz

## SUMMARY[**]

### Federal Arbitration Act / California Labor Law

The panel affirmed the district court's order denying Domino's Pizza, LLC's motion to compel arbitration in a putative class action brought by Domino's drivers, asserting violations of various California labor laws.

The district court denied the motion based on its finding that the drivers were a "class of workers engaged in foreign or interstate commerce," and were therefore exempt from the requirements of the Federal Arbitration Act ("FAA"), notwithstanding their contracts with Domino's that provided claims between the parties be submitted to arbitration under the FAA.

Section 1 of the FAA exempts from the arbitration mandate certain employment contracts, including "workers engaged in foreign and interstate commerce," referred to as the "residual clause."  The exemption applies if the class of

---

[*] The Honorable Barrington D. Parker, United States Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

workers is engaged in a "single, unbroken stream of interstate commerce" that renders interstate commerce a "central part" of their job description. *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 866 (9th Cir. 2021).

Domino's contended that the drivers who delivered goods to individual Domino's franchisees in California were not engaged in interstate commerce because the franchisees, all located in California, placed orders with the supply center in the state, and the goods delivered were not in the same form in which they arrived at the supply center. The panel disagreed. The panel held that *Rittman v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), which concerned Amazon package delivery drivers, was instructive. Like Amazon, Domino's was directly involved in the procurement and delivery of interstate goods, was involved in the process from the beginning to the ultimate delivery of the goods to their destinations, and its business included not just the selling of goods, but also the delivery of those goods. The alteration of the goods at the supply center did not change the result. The panel concluded that, as with the Amazon drivers, the transportation of interstate goods on the final leg of their journey by the Domino's drivers satisfied the requirements of the residual clause.

## COUNSEL

Norman M. Leon (argued), DLA Piper LLP (US), Chicago, Illinois; Steve L. Hernández, DLA Piper LLP (US), Los Angeles, California; Taylor Wemmer, DLA Piper (US) LLP, San Diego, California; for Defendant-Appellant.

Aashish Y. Desai (argued) and Adrianne De Castro, Desai Law Firm P.C., Costa Mesa, California, for Plaintiff-Appellee.

**OPINION**

HURWITZ, Circuit Judge:

Three delivery drivers sued Domino's Pizza, LLC, on behalf of themselves and a putative class, asserting violations of various California labor laws. Domino's moved to compel arbitration pursuant to its contracts with the drivers. The district court denied the motion, finding that the drivers are a "class of workers engaged in foreign or interstate commerce," and are therefore exempt from the requirements of the Federal Arbitration Act ("FAA") under 9 U.S.C. § 1. We affirm.

I

Domino's sells pizza to the public primarily through franchisees. Domino's buys various goods, such as mushrooms, that are used by its franchisees in making pizzas, from suppliers outside of California. Those goods are then delivered by third parties to the Domino's Southern California Supply Chain Center ("Supply Center"). At the Supply Center, Domino's employees reapportion, weigh, package, and otherwise prepare the goods to be sent to franchisees. Domino's franchisees in Southern California order the goods either online or by calling the Supply Center, and the plaintiff drivers ("D&S drivers"), who are employees of Domino's, then deliver the goods to the franchisees.

Edmond Carmona and two other D&S drivers filed this putative class action against Domino's in 2020, alleging violations of California labor law. The three lead plaintiffs each had agreements with Domino's providing that "any claim, dispute, and/or controversy" between the parties would "be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act."

In response to the D&S drivers' complaint, Domino's moved to compel arbitration. The district court denied the motion, finding the plaintiffs exempt from the FAA under 9 U.S.C. § 1 notwithstanding their contracts with Domino's because they are transportation workers "engaged in foreign or interstate commerce." Domino's timely appealed. We have jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(B) and review the denial of a motion to compel arbitration *de novo*. *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019).

II

The FAA provides that arbitration agreements "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 1 of the FAA, however, exempts from the arbitration mandate "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The clause setting out that last category, the one relevant here, is sometimes referred to as the "residual clause." *See, e.g.*, *In re Grice*, 974 F.3d 950, 955 (9th Cir. 2020). The residual clause is afforded a "narrow construction" to further the FAA's purpose of overcoming "judicial hostility to arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118 (2001) (cleaned up). "The burden is on the party opposing arbitration . . . to show

that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1151 (9th Cir. 2008) (quoting *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987)).

The "critical factor" in determining whether the residual clause exemption applies is not the "nature of the item transported in interstate commerce (person or good) or whether the plaintiffs themselves crossed state lines, but rather the nature of the business for which a class of workers performed their activities." *Grice*, 974 F.3d at 956 (cleaned up). The exemption applies if the class of workers is engaged in a "single, unbroken stream of interstate commerce" that renders interstate commerce a "central part" of their job description. *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 866 (9th Cir. 2021).

Domino's does not dispute that the third parties who delivered goods to the Supply Center are engaged in interstate commerce. But it contends that the D&S drivers who deliver goods to individual Domino's franchisees in California are not so engaged because the franchisees, all located in California, place orders with the Supply Center in the state, and the goods delivered are not in the same form in which they arrived at the Supply Center. We disagree.

Our recent opinion addressing the residual clause, *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), is instructive. In *Rittmann*, we held that Amazon package delivery drivers were engaged in "a continuous interstate transportation" of goods because they picked up packages that had come across state lines to Amazon warehouses and then transported them "for the last leg" to their eventual destinations. *Id.* at 915–16. Amazon coordinated the deliveries from origin to destination, and the packages were

not transformed at the warehouses. *Id.* at 907, 915–17. We emphasized that "Amazon's business includes not just the selling of goods, but also the delivery of those goods." *Id.* at 918.

Like Amazon, Domino's is directly involved in the procurement and delivery of interstate goods; the D&S drivers, like the Amazon package delivery drivers, transport those goods "for the last leg" to their final destinations. *See id.* at 915–16. Like Amazon, Domino's is involved in the process from beginning to the ultimate delivery of the goods to their destinations and its "business includes not just the selling of goods, but also the delivery of those goods." *See id.* at 918.

To be sure, there are some factual differences between this case and *Rittmann*. The customers to whom the Amazon drivers delivered the interstate goods in *Rittmann* initiated the purchases online with Amazon, *id.* at 907, while the Domino's franchisees order the goods from the Supply Center in California only after Domino's has already purchased them. But this is a distinction without a difference. The issue is not how the purchasing order is placed, but rather whether the D&S drivers operate in a "single, unbroken stream of interstate commerce" that renders interstate commerce a "central part" of their job description. *See Capriole*, 7 F.4th at 866. As with the Amazon drivers, the transportation of interstate goods on the final leg of their journey by the D&S drivers satisfies this requirement. Although some of the goods delivered to the Supply Center are from California suppliers, that does not change the outcome. *See Rittmann*, 971 F.3d at 917 n.7 (explaining that Amazon package delivery drivers are engaged in interstate commerce "even if that engagement also involves intrastate activities").

Nor does the alleged "alteration" of the goods at the Supply Center change the result. Although some of the goods are transformed into pizza dough at the Supply Center, items such as mushrooms are simply reapportioned, weighed, packaged, and stored before being delivered to franchisees by the D&S drivers. This case is thus different than *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), upon which Domino's relies. *Schechter Poultry* held that live poultry was no longer in the stream of interstate commerce after being processed at slaughterhouses and then sold locally to retail dealers and butchers who in turn sold directly to consumers. *Id.* at 543. Here, the relevant goods are not transformed into a different form and were procured out-of-state by Domino's to be sold to a Domino's franchisee, not to an unrelated third party.[1] *Cf. Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1154 (N.D. Cal. 2015) ("Ingredients contained in the food that Plaintiff ultimately delivered from restaurants ended their interstate journey when they arrived at the restaurant where they were used to prepare meals.").

**AFFIRMED**.

---

[1] The other cases Domino's relies on involve companies that engage with goods only *after* they arrive in state. *See Lee v. Postmates Inc.*, No. 18-cv-03421-JCS, 2018 WL 6605659, at *7 (N.D. Cal. Dec. 17, 2018); *Bean v. ES Partners, Inc.*, 533 F. Supp. 3d 1226, 1236 (S.D. Fla. 2021).