MATHIS v. KERR
2024 OK 52
Case Number: 120246
Decided: 06/25/2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2024 OK 52, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

Â 

Â 

SPENCER MATHIS and JADEN FENSTERMAKER, Plaintiffs/Appellants,
v.
JAMES KERR, 5280 SOLUTIONS LLC, DASH LOGISTICS LLC, ACCELROUTE LLC, Defendants/Appellees.

CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION I
Honorable Douglas W. Golden, Trial Judge

Â¶0 The plaintiffs/appellants worked for and delivered Amazon packages in the Tulsa, Oklahoma, area for the defendant/appellee, James Kerr. After Kerr fired them, the plaintiffs filed a lawsuit against him. Kerr sought to compel arbitration pursuant to arbitration provisions of the plaintiffs' employment contracts. The plaintiffs objected, arguing that they could not be compelled to arbitrate because federal and state law precluded arbitration. The trial court disagreed, granted the motion to compel arbitration, and stayed the lawsuit until completion of arbitration. The plaintiffs appealed, and the Court of Civil Appeals affirmed. We granted certiorari and hold that: 1) employees who deliver Amazon packages are exempted from arbitration under federal law; and 2) the district court's exclusive jurisdiction over the retaliatory discharge claims precludes arbitration of those claims under Oklahoma law.

STAY OF NOVEMBER 20, 2023, LIFTED;
COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT REVERSED AND REMANDED FOR FURTHER 
PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

Caleb Salmon, Tulsa, Oklahoma, for Plaintiffs/Appellants.

Justin P. Grose, Oklahoma City, Oklahoma, for Defendants/Appellees.

KAUGER, J.:

Â¶1 We granted certiorari to address the first impression questions of whether: 1) employees who deliver Amazon packages are exempted under federal arbitration law; and 2) Oklahoma law precludes enforcement of the employment arbitration agreements in this cause. We hold that: 1) federal law exempts employees who deliver Amazon packages from arbitration; and 2) the district court's exclusive jurisdiction over retaliatory discharge claims precludes arbitration of those claims under Oklahoma law.

.FACTS

Â¶2 The plaintiff/appellant, Spencer Mathis (Mathis/employee) worked as a local delivery contractor for Amazon, Inc., in the Tulsa area in Creek County, Oklahoma. The plaintiff/appellant, Jaden Fenstermaker (Fenstermaker) supervised Mathis. Their paychecks came from two different LLCs, 5280 Solutions and Dash Logistics. The defendant/appellee, James Kerr (Kerr/employer) apparently ran both companies.

Â¶3 Kerr employed drivers to drive delivery vans to pick up packages from a local warehouse and deliver them to Amazon customers. While delivering packages on March 27, 2021, a large dog bit Mathis on the knee. He subsequently filed a workers' compensation claim, received medical treatment, and was required to take time off work. When he returned to work, Mathis continued to suffer knee pain. Mathis alleges that on May 12, 2021, Kerr promised to give him country routes with fewer stops that require climbing in and out of the truck with packages.

Â¶4 However, the employee also alleges that, instead, Kerr: 1) told the dispatcher to assign Mathis to the most difficult routes with 190 or more stops per day; and 2) sought to induce the employee to quit and undermine the workers' compensation claim. Kerr also asked Fenstermaker to discourage Mathis from pursing a workers' compensation claim. On May 22, 2021, Mathis asked to be put on the promised country routes because his knee hurt, and it was hard for him to keep up. The employer instructed Fenstermaker to tell Mathis if he did not drop the claim, it would follow him around for the rest of his career and no one would want to hire him.

Â¶5 A few days later, without warning, Kerr fired Mathis and Fenstermaker. The employees attempted to work for another Amazon contractor, but were denied employment because Kerr told the contractor about the workers' compensation claim. Fenstermaker also alleges that after he was fired, Kerr used Fenstermaker's business credit card for which Fenstermaker was personally liable. Kerr's unauthorized use of the card caused Fenstermaker to incur personal liability for charges he did not make.

Â¶6 On July 12, 2021, the employees filed a lawsuit against Kerr and his companies in the District Court of Creek County, Oklahoma. Between the two of them, Mathis and Fenstermaker alleged claims which included wrongful workers' compensation retaliation, tortious interference with contract and business relations, identity theft, and deceit.

Â¶7 On August 30, 2021, Kerr filed a motion to compel arbitration, arguing that both employees' employment contracts contained mandatory arbitration provisions which required arbitration of their claims. On September 20, 2021, the employees responded, arguing that because: 1) federal law exempts transportation workers engaged in interstate commerce from arbitration agreements, Mathis and Fenstermaker were not bound by the arbitration provisions of their employment contracts; and 2) the arbitration agreements were also unenforceable under Oklahoma law because the district court had exclusive jurisdiction over this cause.

Â¶8 On January 10, 2022, the trial court held a hearing on the motion to compel arbitration. On February 1, 2022, it filed an order granting the motion compelling arbitration of the plaintiffs' claims and staying the cause until the completion of arbitration. The plaintiffs appealed on March 3, 2023, and the Court of Civil Appeals affirmed. We granted certiorari on September 25, 2023, to address the first impression questions.

Â¶9 However, on September 29, 2023, the United States Supreme Court granted certiorari in the case of Bissonnette v. LePage Bakeries Park St., LLC., 601 U.S. ___, 144 S.Ct. 905 (2024). Bissonette concerned whether local Connecticut delivery drivers of nationwide distributed baked goods were exempted from arbitration under federal law. On October 19, 2023, Amazon.com and Amazon Logistics filed a Petition for Certiorari for in Amazon v. Miller, No. 23-424, ___ S.Ct. ___, (2024 WL 1706098).Amazon concerned whether Amazon delivery drivers who make last-leg local deliveries of Amazon goods shipped from other states or countries to consumers were also exempt from arbitration under federal law.

Â¶10 Because these two cases appeared to be dispositive of the federal law issue in this cause, we issued a stay on November 20, 2023, until the United States Supreme Court resolved both cases. On April 12, 2024, the United States Supreme Court issued an opinion in Bissonnette, and on April 22, 2024, it denied certiorari in Amazon. Consequently, we lift the stay to address the issues presented and to apply the two United States Supreme Court cases to this cause.

I.
FEDERAL LAW EXEMPTS EMPLOYEES WHO DELIVER AMAZON 
PACKAGES FROM ARBITRATION.

Â¶11 The employees argue that their arbitration agreements are unenforceable and invalid because they were workers engaged in interstate commerce and federal law exempts such workers from arbitration. The employer argues that federal law is inapplicable, and Mathis and Fenstermaker are bound by their employment arbitration agreements.

A. 
The Exclusion of Workers Engaged in Interstate Commerce from Arbitration.

Â¶12 The Federal Arbitration Act (FAA) applies to arbitration agreements in contracts involving commerce.

Â¶13 Prior to June of 2022, federal circuit courts had reached conflicting decisions on what constituted a "class of workers engaged in foreign or interstate commerce" under the FAA.Rittman v. Amazon.com Inc., 971 F.3d 904 (9th Cir. 2020) cert. denied, Amazon.com, Inc., v. Rittman, 141 S.Ct. 1374 (2021), the plaintiffs contracted with Amazon Logistics, Inc., to provide delivery services for AmFlex.

Â¶14 Amazon Logistics, Inc., is a subsidiary of Amazon.com, Inc., an online retailer that sells its own products, and provides fulfillment services for third-party sellers who also sell their products on Amazon.com. In the AmFlex program, Amazon contracted with individuals to make "last mile" deliveries of products from Amazon warehouses to the products' destinations using the AmFlex smart phone application.

Â¶15 AmFlex participants used a personal vehicle, bicycle, or public transportation, to deliver products ordered through the Amazon website or mobile applications. They picked up assigned packages from a local Amazon warehouse and drove an assigned route to deliver the packages. AmFlex delivery providers occasionally crossed state lines to make deliveries, but most of their deliveries took place intrastate. At the end of each shift, the delivery providers returned undelivered packages to Amazon warehouses. The 9th Circuit held that Amazon Flex delivery drivers were precluded from arbitration because they were engaged in interstate commerce.

Â¶16 In Carmona v. Domino's Pizza LLC., 21 F.4th 627 (9th Cir. 2021), cert. granted, Domino's Pizza, LLC., v. Carmona, 143 S.Ct. 361, 214 L.Ed.2d 167 (2022) the 9th Circuit Court also determined that three delivery drivers were within the class of workers engaged in interstate commerce, and therefore exempt from arbitration under the FAA. In Carmona, suppliers from outside the state supplied the ingredients for making pizzas and delivered them to a Domino's Supply Center. At the Supply Center, Domino's employees packaged and prepared the ingredients to be sent to franchisees. Domino's drivers then delivered the goods from the Supply Center to franchisees.

Â¶17 The delivery drivers sued Domino's, alleging violations of state labor laws. The 9th Circuit Court affirmed the trial court's denial of a motion to compel arbitration pursuant to the drivers' employment contracts. The United States Supreme Court granted certiorari in Carmona, vacated the opinion, and remanded it back to the 9th Circuit for further consideration and application of Southwest Airlines Co., v. Saxon, 596 U.S. 450, 142 S.Ct. 1783, 213 L.Ed.2d 27 (2022).

Â¶18 Saxon was a June 6, 2022, decision of the United States Supreme Court. Latrice Saxon, an airline ramp supervisor for Southwest Airlines, filed a putative class action against the airlines for failure to pay proper overtime wages. Southwest sought to dismiss the lawsuit because Saxon's employment contract required arbitration of wage disputes individually. Saxon claimed she was exempt from arbitration based on the FAA exclusion of a "class of workers engaged in foreign or interstate commerce."

Â¶19 Southwest employed ramp agents to physically load and unload baggage, airmail and freight. It employed ramp supervisors such as Saxon to train and supervise teams of ramp agents. It was undisputed that ramp supervisors also stepped in frequently to load and unload cargo alongside ramp agents. The Court addressed whether Saxon was within the exempted class and if so, how to make such a determination.

Â¶20 First, the Court determined how to define the relevant "class of workers." The Court recognized that the term "workers" refers to the actual work that members of the class, as a whole, typically carry out. It said that "Saxon is therefore a member of a 'class of workers' based on what she does at Southwest, not what Southwest does generally."

Â¶21 The next question was whether Saxon's class was "engaged in foreign or interstate commerce." In this regard, the Court said that: 1) the "loading or unloading of an interstate shipment by the employees of a carrier is so closely related to interstate transportation as to be practically part of it;" and 2) "airline employees who physically load and unload planes traveling in interstate commerce are, as a practical matter, part of the interstate transportation of goods." Consequently, the Court held that Saxon's class was a "class of workers engaged in foreign or interstate commerce."

Â¶22 The Court further noted that cargo loaders were intimately involved with commerce (e.g. transportation) of cargo which is bound for interstate transit. It said:

[T]here could be no doubt that [interstate] transportation [is] still in progress, and that a worker is engaged in that transportation, when she is 'doing the work of unloading' or loading cargo from a vehicle carrying goods in interstate transit.

After Saxon, the 9th Circuit Court of Appeals, reconsidering Carmona, supra, found no inconsistency with Saxon. Consequently, the 9th Circuit Court of Appeals reached the same conclusion it did the first time -- that the FAA excluded the delivery drivers from arbitration. The United States Supreme Court denied certiorari on April 22, 2024.

B.
Amazon delivery drivers fall within the arbitration exemption of the FAA.

Â 

Â¶23 Bissonnette v. LePage Bakeries Park St., LLC., 601 U.S. ___, 144 S.Ct. 905 (2024), involved Flower Foods, a company who produces and markets baked goods that are distributed nationwide. Flower Foods baked the goods and sent them to a Connecticut warehouse. The plaintiffs were franchisees who owned the rights to distribute the baked goods in certain parts of Connecticut. The plaintiffs picked up baked goods and distributed them to local shops. The plaintiffs also found new retail outlets, advertised, set up promotional displays, and maintained their customers' inventories by stocking shelves and replacing expired products.

Â¶24 After the plaintiffs sued Flower Foods and two of its subsidiaries for violating state and federal wage laws, Flower Foods sought to compel arbitration pursuant to employment arbitration agreements. The 2nd Circuit Court of Appeals held that the FAA was inapplicable because the plaintiffs were in the baking industry, and not the transportation industry. The plaintiffs sought review by the United States Supreme Court. The United States Supreme Court held a worker need not be in the transportation industry to fall within the FAA exemption to arbitration, but that any exempt worker must at least play a direct and necessary role in the free flow of goods across borders. It also expressly noted that it was not deciding whether the petitioners were transportation workers or that petitioners were not "engaged in foreign or interstate commerce" within the meaning of Â§ 1 because they deliver baked goods only in Connecticut.

Â¶25 In a strikingly similar cause to this one, the 9th Circuit Court of Appeals in Miller v. Amazon.com, Inc., No. 21-36048, 2023 WL 5665771, cert. denied, Amazon.com, Inc., v. Miller, No. 23-424, ___ S.Ct. ___, (2024 WL 1706098) determined that Amazon delivery drivers fall within the arbitration exemption of the FAA. In Miller, the plaintiffs worked as Amazon Flex delivery drivers making last-leg deliveries of Amazon good shipped from other states or countries to consumers, as well as deliveries of food, groceries and packages stored locally that may be eligible for tips. The delivery drivers sued Amazon for failing to honor a promise that workers would receive 100% of the tips that customers added for tip-eligible deliveries, in violation of Washington state law.

Â¶26 The 9th Circuit Court of Appeals held that the drivers were exempt from arbitration under the FAA, noting that the drivers have only one contract of employment which governs all of their work, including shifts for both last-mile deliveries as well as shifts for local tip-producing deliveries. The United States Supreme Court denied certiorari on April 22, 2024, leaving the 9th Circuit opinion intact.

Â¶27 Here, given the facts and holdings of the current decisions of the United States Supreme Court and 9th Circuit Court of Appeals involving employees like the ones involved in this cause, we can only reach one conclusion -- employees who deliver Amazon packages are exempt from arbitration under federal law. In our view, whether the employees actually cross a state line may be a relevant factor, but it is not dispositive of this cause because Amazon delivery drivers engage in interstate commerce nearly every time they deliver goods shipped from other states or countries to consumers according to the 9th Circuit's rationale. The employer's answer to the petition for certiorari acknowledges that both employees delivered packages. Consequently, they are both included within the excluded class of workers.

II.
THE DISTRICT COURT'S EXCLUSIVE JURISDICTION OVER 
RETALIATORY DISCHARGE CLAIMS PRECLUDES ARBITRATION OF 
SUCH CLAIMS.

Â¶28 Aside from the applicability of the FAA, neither party argues that federal law exclusions preempt state arbitration agreements,

A.
The history of district courts' exclusive remedy.

Â¶29 Between the two employees, their claims include wrongful workers compensation retaliation, tortious interference with contract and business relations, identity theft, and deceit. In Thompson v. Bar-S Foods Co., 2007 OK 75174 P.3d 567

Â¶30 The statute in effect at the time was 85 O.S. 2001 Â§7

Except as otherwise provided by law, the district courts of the state shall have jurisdiction, for cause shown to restrain violations of this act.

Bar-S argued that the language in the statute did not show any legislative intent to create exclusive jurisdiction in the district courts of Oklahoma. In other words, the statutory language did not preclude arbitration of retaliatory discharge issues. Indeed, nowhere in the statute was the word "exclusive." This Court did not settle Bar-S' argument because the arbitration agreement provided for unilateral change by the employer. Accordingly, we determined it to be unenforceable. Nevertheless, the Legislature began overhauling the workers compensation regime four years after Thompson and repealed the statute.

Â¶31 In 2013, the Legislature enacted the Administrative Workers' Compensation Act,85A O.S. Supp. 2013 Â§7

Â¶32 In 2019, the Legislature again amended the statute to provide exclusive jurisdiction in the district courts of Oklahoma. The statute has not been amended since 2019, and 85A O.S. 2021 Â§7

A. An employer may not retaliate against an employee when the employee has in good faith:

1. Filed a claim under this act;
2. Retained a lawyer for representation regarding a claim under this act;
3. Instituted or caused to be instituted any proceeding under the provisions of this act; or
4. Testified or is about to testify in any proceeding under the provisions of this act.

B. The district courts shall have exclusive jurisdiction to hear and decide claims based on this section. . . .

H. The remedies provided for in this section shall be exclusive with respect to any claim arising out of the conduct described in subsection A of this section. (Emphasis supplied.)

The Act provides, with a few exceptions, exclusive remedies to all employees -- exclusive to all other rights and remedies.

Â¶33 Because of the legislative changes, the district court's exclusive jurisdiction, and the legislative strictures of strict construction, it appears that Â§7 shows legislative intent to guarantee both employers and employees entitlement to settle wrongful retaliation disputes such as this in the district courts of Oklahoma and no other forum. Thus, arbitration of such a claim is statutorily prohibited. Nevertheless, even if the changes were not such a clear indication of the Legislature's intent, the changes, coupled with the application of the rationale of Bruner v. Timberlane Manor Ltd. Partnership, 2006 OK 90155 P.3d 16

B.
The Directives of the Workers' Compensation Act Prevail Over the Uniform 
Arbitration Act.

Â¶34 Oklahoma's Uniform Arbitration Act, 12 O.S. 2021 Â§Â§1851-1881 applies to all agreements to arbitrate.Bruner v. Timberlane Manor Ltd. Partnership, 2006 OK 90155 P.3d 1663 O.S. 2001 Â§1-1939

Â¶35 The rationale for determining that the arbitration agreement was unenforceable was that the specific statute in the Nursing Home Care Act controlled over the general Oklahoma Uniform Arbitration Act. The employer argues that Bruner is distinguishable because the Nursing Home Act guaranteed a jury trial. However, this argument is unconvincing because, while 85A O.S. 2021 Â§7

Accordingly, we remand the cause to the district court for proceedings consistent with this opinion including the determination of facts or theories existing under law or equity which would disfavor or prohibit arbitration of any of the plaintiffs' remaining claims.

CONCLUSION

Â¶36 Because of the recent decisions of the United States Supreme Court and the 9th Circuit Court of Appeals, involving delivery drivers of Amazon goods, we hold they are exempt from federal arbitration law. Furthermore, to the extent the Oklahoma Legislature has required workers' retaliation claims to be exclusively resolved in the district courts, state law precludes arbitration of those disputes. Nevertheless, fact questions remain regarding whether the other claims alleged by the plaintiffs should be arbitrated.

STAY OF NOVEMBER 20, 2023, LIFTED;
COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT REVERSED AND REMANDED FOR FURTHER 
PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

ROWE, V.C.J., KAUGER, WINCHESTER, EDMONDSON, COMBS, GURICH, DARBY, JJ., concur.

KANE, C.J., dissents.

KUEHN, J., concurs in part, dissents in part (by separate writing.)

FOOTNOTES

Miller v. Amazon.com, Inc., No. 21-36048, 2023 WL 5665771 (9th Cir. Sept. 1, 2023).

"Maritime transactions", as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; "commerce", as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 149 L.Ed.2d 234 (2001), the Court explained that the exclusion was likely due to Congress's plan to implement more specific legislation for those engaged in transportation. Neither party argues that there is any other, more specific federal law which would be dispositive of this cause.

Southwest Airline Co. v. Saxon, 596 U.S. 450, 142 S.Ct. 1783, 213 L.Ed.2d 27 (2022), discussed the conflict as being between the 7th Circuit decision in Saxon v. Southwest Airlines Co., 993 F.3d 492 (7th Cir. 2021), and the 5th Circuit's case of Eastus v. ISS Facility Services, Inc., 960 F.3d 207 (5th Cir. 2020). Other Courts have grappled with the issue as well. See, e.g., Capriole v. Uber Technologies, Inc., 7 F. 4th 854 (9th Cir. 2021) [Arbitration exemption did not apply to Uber drivers.]; and Bean v. Es Partners, Inc., 533 F. SupP.3d 1226 (S.D. Fl. 2021) [Arbitration exclusion did not apply to courier route drivers delivering prescription medications.].

Domino's Pizza, LLC., v. Carmona, 143 S.Ct. 361, 214 L.Ed.2d 167 (2022) provides:

On petition for writ of certiorari to the United States Court of Appeals for the Ninth Circuit. Petition for writ of certiorari granted. Judgment vacated, and case remanded to the United States Court of Appeals for the Ninth Circuit for further consideration of Southwest Airlines Co. v. Saxon, 596 U.S. __, 142 S.Ct. 1783, 213 L.Ed.2d 27 (2022).

Saxon, 596 U.S. at 456.

Saxon, 596 U.S. at 458-49. The Court went on to distinguish two previous cases as being too far removed from interstate commerce. The first, Gulf Oil Corp. v. Copp Paving Co. Inc., 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974), involved an asphalt making firm who made intrastate sales of asphalt. The Court said even though the asphalt was later used to make interstate highways, there was only a perceptibility connected to instrumentalities of interstate commerce and that was not enough. The second was United States v. American Building Maintenance Industries, 422 U.S. 271, 95 S.Ct. 2150, 45 L.Ed.2d 177 (1975) wherein the Court held that simply supplying localized janitorial services to a corporation engaged in interstate commerce did not satisfy the "in commerce" requirement.

Domino's Pizza, LLC., v. Carmona, __ S.Ct. __, 2024 WL 1706016 (2024).

Bissonnette v. LePage Bakeries Park St., LLC., 601 U.S. ___, 144 S.Ct. 905, 913 (2024), and expressly states that it has no opinion on any alternative grounds in favor of arbitration raised below. In footnote 2, the Court also stated: "The Second Circuit did not address whether Bissonnette and Wojnarowski qualify as transportation workers based on the work that they perform, or whether they are 'engaged in ... interstate commerce' even though they do not drive across state lines. We do not decide those issues." In the Second Circuit's opinion in Bissonnette v. LePage Bakeries Park St., LLC., 49 F.4th 655, 659 (2nd Cir. 0222), the court discusses, but does not decide, whether Connecticut law allows such an arbitration. It does, however, recognize that "multiple" courts lean towards rejecting the proposition that state arbitration law is preempted when a plaintiff is excluded from the FAA.

Applicable Law and Effect of Decision.

Interpretation and Enforcement of the Agreement: The Federal Arbitration Act ("FAA") and federal common law applicable to arbitration shall govern the interpretation and enforcement of this Agreement. If, for any reason, the FAA or federal common law is found not to apply to this Agreement (or its agreement to arbitrate), then applicable state law shall govern.

85A O.S. 2021 Â§1

Sections 1 through 106 and 150 through 168 of this act shall be known and may be cited as the "Administrative Workers' Compensation Act". The provisions of the Administrative Workers' Compensation Act shall be strictly construed.

This statute has remained unchanged since its enactment in 2013.

85A O.S. Supp. 2013 Â§7

A. An employer may not discriminate or retaliate against an employee when the employee has in good faith:

1. Filed a claim under this act;
2. Retained a lawyer for representation regarding a claim under this act;
3. Instituted or caused to be instituted any proceeding under the provisions of this act; or
4. Testified or is about to testify in any proceeding under the provisions of this act. . .

B. The Commission shall have exclusive jurisdiction to hear and decide claims based on subsection A of this section. . . .

H. The remedies provided for in this section shall be exclusive with respect to any claim arising out of the conduct described in subsection A of this section. (Emphasis supplied.)

85A O.S. 2021 Â§5

A. The rights and remedies granted to an employee subject to the provisions of the Administrative Workers' Compensation Act shall be exclusive of all other rights and remedies of the employee, his legal representative, dependents, next of kin, or anyone else claiming rights to recovery on behalf of the employee against the employer, or any principal, officer, director, employee, stockholder, partner, or prime contractor of the employer on account of injury, illness, or death. . . .

85A O.S. 2021 Â§1

12 O.S. 2021 Ch. 38B Â§1851

Sections 1 through 31 of this act shall be known and may be cited as the "Uniform Arbitration Act".

Title 12 O.S. 2021 Ch. 38B Â§1854

C. Beginning January 1, 2006, the Uniform Arbitration Act governs an agreement to arbitrate whenever made.

Bruner v. Timberlane Manor Limited Partnership, 2006 OK 90155 P.3d 16Voss v. City of Oklahoma City, 1980 OK 148618 P.2d 925Rollings v. Thermodyne Indust. Inc., 1996 OK 97818 P.2d 889

63 O.S. 2001 Â§1-1939

A. The owner and licensee are liable to a resident for any intentional or negligent act or omission of their agents or employees which injures the resident. Also, any state employee that aids, abets, assists, or conspires with an owner or licensee to perform an act that causes injury to a resident shall be individually liable.

B. A resident may maintain an action under this act for any other type of relief, including injunctive and declaratory relief, permitted by law.

C. Any damages recoverable under this section, including minimum damages as provided by this section, may be recovered in any action which a court may authorize to be brought as a class action. The remedies provided in this section, are in addition to and cumulative with any other legal remedies available to a resident. Exhaustion of any available administrative remedies shall not be required prior to commencement of suit hereunder.

D. Any waiver by a resident or his legal representative of the right to commence an action under this section, whether oral or in writing, shall be null and void, and without legal force or effect.

E. Any party to an action brought under this section shall be entitled to a trial by jury and any waiver of the right to a trial by a jury, whether oral or in writing, prior to the commencement of an action, shall be null and void, and without legal force or effect. . . .

Â 

Â 

KUEHN, J., CONCURRING IN PART AND DISSENTING IN PART:

Â¶1 I concur with the Majority's analysis of the applicability of the Federal Arbitration Act to the present case. However, I believe the Majority errs in its determination that the provisions of the Administrative Workers' Compensation Act (AWCA) conflict with and control over those in the Oklahoma Uniform Arbitration Act (OUAA). I would interpret these statutes harmoniously, giving effect to the legislative intent behind both statutory schemes and binding Appellants to their arbitration agreement. For the reasons explained below, I concur to Part I of the Majority's opinion, and dissent to Part II.

I. A district court retains jurisdiction over claims submitted to 
arbitration pursuant to an agreement by the parties, so the 
OUAA and Title 85A, Section 7 are not in conflict. 

Â¶2 The Majority finds that the Legislature's grant of "exclusive jurisdiction" to the district courts in 85A O.S. Â§ 785A O.S. Â§ 7Id. The Majority reads these provisions to mean that binding arbitration of claims arising under Â§ 7 is statutorily prohibited -- reasoning that enforcing an agreement between the parties to submit such claims to arbitration deprives the district court of its exclusive jurisdiction. This is emphatically not the case.

Â¶3 This Court has long recognized that "jurisdiction" is comprised of three basic elements: 1) jurisdiction over the parties, 2) jurisdiction over the subject matter of the controversy, and 3) the power to render judgment in the case. See, e.g. Chivers v. Bd. of Comm'rs, 1916 OK 1001161 P. 822

Â¶4 The OUAA provides that "an agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." 12 O.S. Â§ 1857exclusive jurisdiction ... to enter judgment on an award under the Uniform Arbitration Act." 12 O.S. Â§ 187712 O.S. Â§Â§ 187412 O.S. Â§ 1876

Â¶5 Although parties to arbitration may decide to abide by an arbitration award on their own without need for external enforcement, where external enforcement is necessary, it is only obtainable by exercising the power of the district court. See id. The district court can only exercise such power over parties to arbitration, because it retains 1) power over the parties, 2) power over the subject matter, and 3) the power to render judgment in the case throughout the arbitration proceedings. The fact that the court's power in such cases is limited by the provisions of the OUAA does not deprive the court of jurisdiction. Indeed, courts are routinely limited by statutes when exercising jurisdiction in any given case. Submitting a claim under 85A O.S. Â§ 7not deprive the district court of its "exclusive jurisdiction" under that statute. Thus, there is no conflict between Â§ 7 and the OUAA that justifies the Court's decision to render the OUAA inapplicable to Â§ 7 claims.

II. The Bruner decision is readily distinguishable from the present 
case, and its rationale is inapplicable here.

Â¶6 The Majority relies on Bruner v. Timberlane Manor Ltd. P'ship, 2006 OK 90155 P.3d 16 to support its conclusion that granting a district court "exclusive jurisdiction" over a certain set of claims acts as a bar to enforcement of an arbitration agreement between the parties which would subject such claims to arbitration. But this reliance is misplaced.

Â¶7 The Bruner case involved litigation between a nursing home and the daughter of a deceased resident. Id. at Â¶Â¶ 2-3. As answer to the daughter's lawsuit for the wrongful death of her mother, the nursing home sought enforcement of the binding arbitration agreement between the parties. In that case, the Court found that OUAA's mandate to enforce arbitration agreements directly conflicted with provisions of the Oklahoma Nursing Home Act and declined to enforce the arbitration agreement.

Â¶8 Specifically, 63 O.S. 2001, Â§ 1-1939[a]ny waiver by a resident or his legal representative of the right to commence an action under this section, whether oral or in writing, shall be null and void, and without legal force or effect." (emphasis added). Furthermore, Â§1-1939(E) provided that "[a]ny party to an action brought under this section shall be entitled to a trial by jury and any waiver of the right to a trial by a jury, whether oral or in writing, prior to the commencement of an action, shall be null and void, and without legal force or effect." (emphasis added). Taking these subsections together, the Bruner Court found that this language was "a clear rejection of arbitration agreements between nursing homes and their residents." 2006 OK 90

Â¶9 By contrast, the statutory language at issue here does not evince any clear legislative intent to preclude enforcement of arbitration agreements for claims brought under 85A O.S. Â§ 7

Â¶10 In enacting 63 O.S. 2001, Â§ 1-193985A O.S. Â§ 7Bruner provides an excellent example of how to achieve such a result.

III. The use of the word "exclusive" in Title 85A, Section 7, 
expresses the Legislature's intention that claims arising under 
that section not go through the ordinary workers' compensation 
claim process.

Â¶11 When interpreting statutes in apparent conflict, our primary goal is to give effect to the intention of the Legislature. E.g. Raymond v. Taylor, 2017 OK 80412 P.3d 1141Am. Airlines, Inc. v. Okla. Tax Comm'n, 2014 OK 95341 P.3d 56YDF, Inc. v. Schlumar, Inc., 2006 OK 32136 P.3d 656to give full force and effect to each." Keating v. Edmondson, 2001 OK 11037 P.3d 882in cases of ambiguity or conflict...." Id. (emphasis added).

Â¶12 In the present case, the Majority perceives a conflict between the OUAA's directive to enforce arbitration agreements and the provisions of 85A O.S. Â§ 7Bruner, 2006 OK 90155 P.3d 16Trimble v. City of Moore, 1991 OK 97818 P.2d 889Hall v. Globe Life Accident Ins. Co. of Oklahoma, 1999 OK 89998 P.2d 603every word operative, rather than one which makes some words idle and meaningless." Estes v. ConocoPhillips Co., 2008 OK 21184 P.3d 51885A O.S. Â§ 7

Â¶13 The word "exclusive" is used twice in the text of 85A O.S. Â§ 7

Â¶14 Title 85A, Section 7(B) provides that "the district court shall have exclusive jurisdiction to hear and decide claims based on this section." The use of the word "exclusive" in this section can be understood as the Legislature clarifying that the district court's jurisdiction over Â§ 7 claims is exclusive of any jurisdiction that the Workers' Compensation Commission may have over the compensation action which is the basis of the employer's retaliatory act. Title 85A concerns itself primarily with the resolution of workers' compensation claims, and primarily matters within the jurisdiction of the Workers' Compensation Commission and Administrative Law Judges. By using the word "exclusive," the Legislature sought to make clear that Â§ 7 claims are 1) different than other types of claims arising under Title 85A, and 2) that they should be heard in a different forum than other Title 85A claims. The word "exclusive" then, serves not to preclude parties from resolving controversies under Â§ 7 through alternatives to litigation, but to clarify that if litigation takes place, the district courts have jurisdiction at the exclusion of other courts, and particularly at the exclusion of the Workers' Compensation Commission and Administrative Law Judges.

Â¶15 Title 85A, Section 7(H), meanwhile, states that "the remedies provided for in this section shall be exclusive with respect to any claim arising..." under Â§ 7. (emphasis added). The Majority reads this provision, at least in part, as referring to Section 7(B), and reinforcing the exclusivity of the district court's jurisdiction over Â§ 7 claims. But there is a far simpler explanation. Section 7(C) is the portion of the statute that lays out the remedies available to an employee facing retaliation from their employer for filing a workers' compensation claim. Specifically, it states that an employer violating Â§ 7 can be held liable "for reasonable damages, actual and punitive if applicable, suffered by an employee as a result of the violation." Section 7(C) also specifies that exemplary or punitive damage awards under this section cannot exceed one hundred thousand dollars ($100,000). The legal effect of the word "exclusive" in this context then, is to clarify that Section 7(C) is an all-encompassing statement of the damages available to an injured employee facing retaliation by their employer -- actual damages, and punitive damage not to exceed one hundred thousand dollars ($100,000). To read this section as a legislative mandate forbidding the resolution of a Â§ 7 claim by any means other than "jury trial in a district court" would be a vast judicial expansion of the policies articulated in Â§ 7 by the Legislature.

CONCLUSION

Â¶16 Today, the Majority interprets the word "exclusive" as used in 85A O.S. Â§ 785A O.S. Â§ 785A O.S. Â§ 712 O.S. Â§ 1857

FOOTNOTES

Keehan Tenn. Inv., LLC v. Praetorium Secured Fund I, L.P., 71 N.E.3d 325, 330 (Ohio Ct. App. 2016).

Â