Filed 8/28/24  Marquez v. The Payment Consultants CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOCELYN MARQUEZ, | D083787 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CVRI2104219) |
| THE PAYMENT CONSULTANTS, LLC et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Riverside County, Craig G. Riemer, Judge.  Affirmed.

Ogletree, Deakins, Nash, Smoak & Stewart, Tim L. Johnson, and Nikolas T. Djordjevski for Defendants and Appellants.

Lawyers for Justice, Jacob Karczewski, Melissa R. Rinehart, and Eli J. Drummond for Plaintiff and Respondent.

The Payment Consultants, LLC d/b/a Legacy Logistics and Gregory Scott, Chief Executive Officer for Legacy Logistics (collectively, Legacy), appeal from an order denying their motion to compel arbitration.  The trial court concluded Jocelyn Marquez fell within the scope of the Federal Arbitration Act's (9 U.S.C. § 1, et seq.; FAA) transportation worker exemption

under Section 1, which provides: "nothing herein contained shall apply to *contracts of employment* of seamen, railroad employees, or any other class of *workers engaged in foreign or interstate commerce*." (Italics added.)

Legacy argues the exemption does not apply because the arbitration agreement at issue is not a contract of employment. We disagree. Although the arbitration agreement was a standalone document, Marquez signed it contemporaneously with other hiring documents and was required to do so before she could start working.

Legacy also argues the exemption does not apply because Marquez was not a worker engaged in interstate commerce. Specifically, Legacy contends the trial court erred in relying on the "continuous journey" test under *Rittmann v. Amazon.com, Inc.* (9th Cir. 2020) 971 F.3d 904, 930 (*Rittmann*), which provides an employee is engaged in interstate commerce if the goods the employee transports wholly within a state are part of a "continuous interstate transportation." (*Id.* at p. 916.) Legacy urges that the United States Supreme Court, in *Southwest Airlines Co. v. Saxon* (2022) 596 U.S. 450 (*Saxon*), subsequently clarified the "direct and necessary" test, which provides an employee must play a "direct and 'necessary role in the free flow of goods' across borders" for the exemption to apply. (*Id.* at p. 458.) We disagree with Legacy that last leg drivers like Marquez, who pick up and deliver packages *after* cross-border transport is complete, do not have a direct and necessary role in transporting goods across borders. *Rittmann* is not irreconcilable with *Saxon*, and such goods are still part of a continuous journey. We thus conclude Marquez was engaged in interstate commerce.

We affirm the order denying Legacy's motion to compel arbitration.

## I.

### A.

Legacy is a delivery service company based in Riverside, California, that makes local deliveries within California. Legacy contracted with Amazon Logistics, Inc. to deliver packages to Amazon's online customers. Legacy's drivers pick up packages at Amazon facilities and deliver the packages to Amazon customers, all within California.

Marquez began working for Legacy in June 2019. When she was hired, she was "provided several documents to sign" and "told to immediately sign the documents before [she] could begin working." One of those documents was a "Mutual Agreement to Individually Arbitrate Disputes." In her first three months at Legacy—from June to August 2019—Marquez worked as a delivery driver, picking up packages from Amazon's Riverside warehouse and delivering them within California to their final destination—typically, consumers' homes. From September 2019 to the end of her employment with Legacy in March 2021, Marquez worked as a dispatcher. Her duties consisted of handing out company-provided cellphones to drivers, monitoring drivers remotely, and receiving drivers' equipment upon return.

### B.

In September 2021, Marquez brought claims against Legacy under the Private Attorneys General Act (Labor Code § 2698 et seq.; PAGA) for failing to provide compliant rest and meal periods and other wage-related Labor Code violations. Legacy moved to compel Marquez to arbitrate her individual PAGA claims pursuant to the arbitration agreement she signed and sought to stay the class PAGA claims until after arbitration. The trial court, relying on *Rittmann*, denied Legacy's motion.

3

II.

A.

Legacy argues the arbitration agreement that Marquez signed is not a contract of employment exempt from the FAA. Under the circumstances of this case, we disagree.

The FAA's transportation worker exemption applies only to certain contracts of employment. (*Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 119.) "[T]he term 'contracts of employment' refer[s] to agreements to perform work." (*New Prime Inc. v. Oliveira* (2019) 586 U.S. 105, 121 (*Prime*).)

Legacy relies on *Harrington v. Atlantic Sounding Co.* (2d Cir. 2010) 602 F.3d 113, 121 (*Harrington*), for the proposition that an arbitration agreement that is not part of a broader employment agreement between the parties is not a contract of employment. In *Harrington*, the defendants employed the plaintiff for more than two years when the plaintiff suffered a back injury on the job. (*Id.* at pp. 115-116.) While receiving financial support from the defendants for his injury, the plaintiff signed a "Claim Arbitration Agreement" that the defendants mailed him. The arbitration agreement stated the defendants "are prepared to make voluntary advances against settlement of any claim that could arise out of the personal injury/illness claim [the plaintiff has] made . . . , provided [the plaintiff] agree[s] to arbitrate any such claim." (*Id.* at p. 116.) Concluding the arbitration agreement was not a contract of employment because it was not contained within an employment agreement, and therefore not exempt from the FAA, *Harrington* took guidance from *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20 (*Gilmer*).

In *Gilmer*, the plaintiff, in the course of his employment as a financial services manager, was required to register as a securities representative with

4

the New York Stock Exchange. Per the registration application, the plaintiff agreed to arbitrate any controversy with his employer arising out of his employment or termination. (*Gilmer*, 500 U.S. at p. 23.) *Gilmer* concluded the FAA's Section 1 exemption did not apply because the arbitration clause was not contained in a contract of employment. Rather, it was in the plaintiff's securities registration application, a contract between the plaintiff and the securities exchanges rather than his employer; and courts have uniformly concluded the exemption "is inapplicable to arbitration clauses contained in such registration applications." (*Id.* at p. 25, fn. 2.)

Here, unlike the plaintiff in *Harrington* who signed an arbitration agreement two years after his hiring that was completely unrelated to him becoming employed, Marquez was given several documents when she was hired, including the arbitration agreement, which she was required to sign before she could begin working. (See *Harrington*, 602 F.3d at pp. 115-116.)

And, unlike *Gilmer*, where the provision was contained in a securities registration application—a circumstance where it is settled the exemption does not apply (see *Gilmer*, 500 U.S. at p. 25, fn. 2), the agreement here was between Marquez and her employer, not a third party.

Relying on the Supreme Court's statement in *Prime* "[w]hen Congress enacted the Arbitration Act in 1925, the term 'contracts of employment' referred to agreements to perform work," Legacy contends "independent contractor agreements—*not* standalone arbitration agreements—constitute 'contracts of employment.'" (*Prime*, 586 U.S. at p. 121.) However, *Prime* does not opine that standalone arbitration agreements can *never* be part of a broader employment agreement.

Under these circumstances, we conclude the arbitration agreement was a "contract of employment" within the Section 1 exemption to the FAA.

5

B.

Legacy also argues Marquez does not belong to an exempt "'class of workers engaged in foreign or interstate commerce.'"  We again disagree.

"[T]ransportation workers need not cross state lines to be considered 'engaged in foreign or interstate commerce.'"  (*Rittmann*, 971 F.3d at p. 910.)  To be exempt from the FAA under Section 1, transportation workers must "at least play a direct and 'necessary role in the free flow of goods' across borders" and be "actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce."  (*Saxon*, 596 U.S. at p. 458.)

In concluding Legacy is incorrect, we first define the relevant class of workers to which Marquez belongs, and second determine whether that class of workers is engaged in foreign or interstate commerce.  (See *Saxon*, 596 U.S. at p. 455.)

1.

The relevant "class of workers" is defined by "the actual work that the members of the class, as a whole, typically carry out."  (*Saxon*, 596 U.S. at p. 456.)

During her employment, Marquez worked as a driver delivering Amazon packages in the last leg of their shipment to their destination.  Although she only picked up and delivered packages within the state, Amazon is one of the world's largest online retailers, meaning some of the packages originated across state lines.  (See *Rittmann*, 971 F.3d at p. 915.)  Thus, Marquez belongs to a class of workers who do not themselves cross state lines but nonetheless transport packages as part of their journey in interstate commerce.

Legacy argues that because Marquez worked primarily as a dispatcher, she belongs to a class of workers that did not actually deliver goods, but Legacy cites no authority for the proposition that Marquez's final role at Legacy somehow subsumes and recharacterizes the entirety of her employment there. We thus need not address whether Marquez was engaged in interstate commerce in her additional role as a dispatcher and limit that inquiry to her work as a delivery driver.

2.

"[T]he meaning of the phrase 'engaged in interstate commerce,' as understood at the time of the FAA's passage, was not limited to those transportation workers who themselves crossed state lines." (*Rittmann*, 971 F.3d at p. 910.) "[B]y virtue of the close relationship between their work and interstate transportation," other employees also can be "transportation workers engaged in interstate commerce for purposes of the FAA." (*Waithaka v. Amazon.com, Inc.* (1st Cir. 2020) 966 F.3d 10, 20 [cleaned up].)

In *Rittmann*, the plaintiff was a delivery driver working as an independent contractor through Amazon's AmFlex program. (*Rittmann*, 971 F.3d at p. 907.) Although AmFlex drivers did not themselves cross state lines, *Rittman* concluded they engaged in interstate commerce when they picked up packages "that have been distributed to Amazon warehouses, certainly across state lines," and "transport[ed] packages through to the conclusion of their journeys in interstate and foreign commerce" (last leg) because the packages "remain in the stream of interstate commerce until they are delivered." (*Id.* at p. 915.) Because "transportation of goods wholly within a state [was] still a part of continuous interstate transportation," *Rittmann* further concluded AmFlex drivers were "transportation workers engaged in the movement of interstate commerce." (*Id.* at pp. 915-916.)

7

Subsequently, in *Saxon*, the Supreme Court explained that in order to qualify as a "transportation worker" under Section 1, the worker "must at least play a direct and 'necessary role in the free flow of goods' across borders," meaning the worker "must be actively 'engaged in transportation' of those goods across borders." (*Saxon*, 596 U.S. at p. 458.) *Saxon* concluded the plaintiff, who worked as a ramp supervisor for an airline, was part of such a class of workers because, while she herself never crossed state lines, she loaded and unloaded cargo from airplanes traveling in interstate commerce; thus, she was, "as a practical matter, part of the interstate transportation of goods." (*Id.* at p. 457.)

Legacy argues the trial court erred in relying on *Rittmann* because *Rittmann* did not employ *Saxon*'s direct and necessary test. We, however, are persuaded that there is "no clear conflict between *Rittmann* and *Saxon*." (*Carmona v. Domino's Pizza, LLC* (9th Cir. 2023) 73 F.4th 1135, 1137 (*Carmona*).)[1] *Saxon* did not address whether last leg drivers could qualify for the FAA's Section 1 exemption. But it recognized, referencing *Rittmann*, that "the answer will not always be so plain when the class of workers carries out duties further removed from the channels of interstate commerce or the actual crossing of borders." (*Saxon*, 596 U.S. at p. 457, fn. 2.) *Saxon* thus does not foreclose reliance on *Rittmann*; instead *Rittmann*'s continuous journey test simply complements *Saxon*'s direct and necessary analysis.

Here, as in *Rittmann*, the packages Marquez delivered did not come to rest at the Riverside warehouse, and thus the interstate transactions did not end there. (See *Rittmann*, 971 F.3d at p. 916.) The class of Legacy workers

---

[1] We deny Legacy's motion for judicial notice of an excerpt from the petition for writ of certiorari filed in *Carmona*. (See *Domino's Pizza, LLC v. Carmona* (2024) __ U.S. __ [144 S.Ct. 1391].)

to which Marquez belongs completes the delivery of goods that Amazon ships across state lines. As a practical matter, Legacy drivers are engaged in interstate commerce by playing a direct and necessary role in the interstate delivery of goods, given their transportation of goods within a state are still a part of a continuous interstate transaction. (See *Betancourt v. Transportation Brokerage Specialists, Inc.* (2021) 62 Cal.App.5th 552, 560-561; *Saxon*, 596 U.S. at p. 457.)

Legacy argues this case is distinguishable from both *Saxon* and *Rittmann* because (1) in *Saxon*, the plaintiff worked for an airline, which undeniably engaged in interstate commerce because its airplanes crossed state lines (see *Saxon*, 596 U.S. at p. 453); and (2) in *Rittmann*, the plaintiff contracted directly with Amazon, which engaged in interstate transactions with its customers (see *Rittmann*, 971 F.3d at p. 916). Here, in contrast, Marquez did not contract directly with Amazon, and Legacy does not make deliveries across state lines and does not have any interstate operations. However, we need not address whether Legacy itself is engaged in interstate commerce because as *Saxon* directs, Section 1 "'exempts classes of workers based on *their* conduct, not their *employer's*.'" (*Saxon*, at p. 456.)

Legacy urges it is not a departure from *Saxon* but rather a first step in the analysis to require that the employer itself be engaged in interstate commerce as a prerequisite to any of its intrastate employees being so engaged because the employees would be "continuing to carry out their *employer's* interstate operations through their own work *for that employer*." The only post-*Saxon* case on which Legacy relies to support this contention is *Carmona*. According to Legacy, the court in *Carmona* stated "'the nature of the business for which a class of workers perform[ ] their activities *[is] a "critical factor"* in the § 1 analysis'" (quoting *Carmona*, 73 F.4th at p. 1138,

9

italics and brackets added by Legacy) and relied heavily on the fact that the employer there was a nationwide company engaged in commerce. To the contrary, the court was quoting from its prior opinion that the Supreme Court vacated and remanded for reconsideration in light of *Saxon*. (*Ibid.*, quoting *Carmona v. Domino's Pizza, LLC* (9th Cir. 2021) 21 F.4th 627, 629.) It did so, not to rely on such statement, but rather for the opposite purpose of explaining that although the prior opinion stated as much, it "in the end focused heavily on what the class of workers to which the plaintiffs belonged actually did." (*Carmona*, 73 F.4th at p. 1138.) The post-*Saxon Carmona* court further explained that *Saxon* confirmed that is the "central inquiry" (*id.* at p. 1137), thus nothing in *Saxon* undermined the reasoning in its prior opinion (*id.* at p. 1138). As such, in accordance with *Saxon*, *Carmona* did not rely on the employer's engagement in commerce but rather the employees' conduct.

\* \* \*

In sum, we conclude Marquez is exempt from the FAA under Section 1 because the arbitration agreement she entered into with Legacy was a "contract of employment" and she belongs to a class of transportation workers "engaged in interstate commerce."

III.

We affirm the order denying Legacy's motion to compel arbitration. Marquez is entitled to her costs on appeal. (Cal. Rules of Court, rule 8.278.)

CASTILLO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

KELETY, J.

11